The right to set off unconnected cross demands, it is said, did not exist at common law. (Green v. Farmer, 4 Burr., 2214-2221; but see Eden on Bank., 186.) It was created in England by the statutes of 2 George II, chapter 22, and 8 George II, chapter 24. This is mentioned, to point the further mention, that this right is to be limited by the terms of the enactments, as construed and settled by the courts. By those statutes, it was confined to mutual debts existing between the plaintiff and defendant, and, in suits by or against an executor or administrator, to mutual debts between the testator or intestate and either party. And in the construction and application of those acts it was held, in that country, that if an executor or administrator brought suit upon a debt created against the defendant after the death of the testator or intestate, or upon a debt whereon the cause of action arose after that event, the defendant could not set off a debt which existed and on which there was a cause of action against the *Page 576 
testator or the intestate in his lifetime. (Montagu on Set-off, 38; Babington on Set-off, 63, et seq.) These text-books citeShipman v. Thompson (Willes, 103; S.C., Buller's N.P., 180);Teggetmeyer v. Lumley (Willes, 264, notes). These two cases were criticised in Mardall v. Thelluson (21 L.J. [Q.B.], 410; S.C., 18 Q.B. [Ad. Ell., N.S.], 857), and it was said that they did not support the position contended for. But Mardall v.Thelluson was expressly overruled in Rees v. Watts (11 Exch., 410), and was reversed in Exchequer Chamber (6 Ell. Bl., 976). In the latter case (Rees v. Watts), it was held that, in an action by an administrator, suing in his representative character, for a debt due after the death of his intestate, the defendant could not set off a debt due to him from the intestate in his lifetime. The statutes are there fully considered. The money due from the defendant was said not to be a debt, mutual with that due to him. That due to him was due and payable from the intestate in his lifetime. The money due from him was said not to be received to the use of the intestate; that the intestate had no claim on the defendant in respect of this receipt, which took place after his death; that the intestate and defendant never stood in the relation of mutual debtors to each other, and that consequently there was no set-off. The case is also significant in that it expressly overrules Mardall v.Thelluson (supra), which was recognized as being directly in the way, and which had held that in an action against an executor, as such, on a debt which accrued due from the testator in his lifetime, the executors might set off a debt which accrued due from the plaintiff to them, as executors, since the death of the testator. It is said that the true distinction is this: that where the thing sued for is assets in the hands of the executor or administrator before the recovery, or where the cause of action arises in the executor's own time, and never did arise to the testator, then the executor may bring an action in his own name or as executor. (Shipman v. Thompson, as reported in Montagu on Set-off, appendix, p. 31, note a.)
In this State, there was a statute of set-off before the *Page 577 
Revised Statutes (1 R.L., 515), and it has been held that it was in substance the same as those of England, and that the decisions of the courts there, under those acts, gave a good rule for judicial action under ours. (Gordon v. Brown, 2 J.R., 148;Root v. Taylor, 20 id., 137.) And it was held here accordingly, that a debt created to executors after the death of their testator was not liable to a set-off of a debt due to the defendant from the testator in his lifetime. (Dale v. Cooke,
14 J. Ch., 13.) Upon an application of the principle of the rule to an analogous state of facts, it was held in Rogers v.Taylor (supra), that in a suit by an administrator, the defendant could not set-off a debt existing against the intestate in his lifetime which the defendant had bought since the intestate's death.
Since the adoption of the Revised Statutes, it has been held that the statute of set-off therein contained is, in substance, the same as the statutes of England, and the statute of this State which went before the Revised Statutes, (and the appellant concedes it to be so), and the rule which was laid down under them has been adhered to. (Fry v. Evans, 8 Wend., 530;Hills v. Tallman's Administrator, 21 id., 674.) And it has been especially decided that the section of the statute which relates to suits and set-offs by and against executors and administrators (2 R.S., 355, § 23) is simply an enactment of the law as it was previously recognized and applied, and that the principle of the case 20 Johnson's Reports (supra) is embraced in that section. (Fry v. Evans, supra; Mercein v. Smith, 2 Hill, 210, and see case there cited in notes b and c; Merritt
v. Seaman, 6 Barb., 330; S.C., 6 N.Y., 168; Ketchum v.Milne, Selden's Notes, No. 3, p. 56.) The case last cited is quite apposite. The claim sued upon was for freight of goods carried by vessel. The intestate was the owner of the vessel, and was master of her for part of the voyage. He died while on the voyage, after the carriage had begun and before it was finished. The contract for carriage had been entered into before his death. After his death, the voyage was completed and the goods delivered to the defendant. *Page 578 
Not until then, after the death of the intestate, was the freight earned, though the service had begun before that event. It could not be asked for before that; no cause of action for it existed before that, though the contract out of which the cause of action arose did, before that, exist. The cause of action arose after the death of the intestate. The Supreme Court, on that state of facts and for that reason, refused the defendant the set-off offered by him. This court, without opinion given so far as I can find, affirmed the judgment, and thus agreed with the reason of the Supreme Court. The points now urged were there explicitly taken and urged: That the demand sued upon was the subject of a set-off; that the plaintiff was suing in a representative character, and had no right of action personal to himself; that the debt was not created after the death of the intestate, and did not wholly arise thereafter. They were not sustained by this court. I find this in the case and points deposited in the State library. The cases above cited are most of them very positive in declaring the rule to be, that in action by an executor upon a cause of action which has been created since the death of his testator, or which has accrued or has arisen since that death, the defendant may not set off a debt against the testator existing in his lifetime. If the debt has been created since the death of the testator it must have been created to the representative, and there can be no doubt; for in such case there can be no mutuality of indebtedness. Nor is there room for difference as to what is meant by the phrases "cause of action has accrued," or "cause of action has arisen," since the death of the testator. They do not mean the contracting of the indebtedness, for a cause of action does not accrue or arise from the making of the contract of indebtedness alone, but out of the non-performance of it as well. "Cause of action" implies a right to bring an action, and some one who has a right to sue and some one who may be lawfully sued. Thus, where the payee of a note was dead when it fell due, that is, became payable, the cause of action did not accrue until letters of administration had been granted. "Cause of *Page 579 
action" is the right to prosecute an action with effect. (Douglass v. Forrest, 4 Bing., 686.) So that a cause of action does not run from the making of the promise, if it is a promise to do something at a future time, but only from the expiration of that time. (Thorpe v. Coombe, 8 Dow. Ry., 347.) The cases arising under the statute of limitation are to the same end, that no cause of action has accrued until there is a right to sue, and some one to sue, and some one to be sued lawfully. (Blanchard on Lim., 104, et seq., and cases cited; Wilkinson on Lim., 44, et seq., and cases cited.) And further; the cases cited dwell upon the necessity there is, that the debts to be set off should be mutual. Now mutual debts, in the purview of a statute of set-off, are not merely those which are owing, but those also which are due and payable, on each of which the cause of action has accrued and exists at the same time. A debt not yet due and payable, may not be set off against one presently suable. (Rogerson v. Ladbrooke, 1 Bing., 93.) The testator in this case, if he had been sued in his lifetime for the demands now sought to be set off, could not have set off the demand on which this action is brought. The debts were not mutual within the statute, i.e, though the testator owed the defendant in a debt due, accrued due to use the phrase in Rees v. Watts
(supra), which is the same as due and payable; the defendant did not then owe him, indeed could not by the terms of his obligation, which was not to fall due and payable, to become accrued due, until after the death of the testator. The terms of that obligation make a promise to the testator, but a promise not enforceable in the lifetime of the testator, a promise to pay the plaintiff as executrix of the testator. It must be conceded, that the facts of many of the cases cited do not come fully up to the rule laid down in them; for in many of them not only did the cause of action arise after the death of the testator or intestate, but the indebtedness was created after. The case from Selden's Notes is, however, in its facts quite as broad as the rule laid down. The opinion in the Supreme Court in that case cites and relies upon Fry v. Evans, Mercein v. Smith *Page 580 
(both supra), and the judgment of the Supreme Court being sustained by this court without opinion, it must be considered that this court adopted and followed the rule of those and kindred cases. And here I will notice the position of the appellant, that the demand in this action arose in the lifetime of the testator; that it was debitum in presenti, thoughsolvendum in futuro; and that the time of payment was certain. The obligation was first to pay a certain portion of an annuity. The time of payment thereof was certain, to wit, four months after the death of the testator. Yet it was not payable to the testator, but to whomsoever should be his executrix, and could never have been the subject of action by the testator, nor the subject of set-off by him, in an action by the appellant against him. We need not, however, dwell upon this part of the plaintiff's cause of action, because the claim for funeral expenses which is allowed to the defendant by our judgment, more than covers it. The obligation, second, was in four months after the decease of the testator to pay to his executrix, either the sum of $1,200 or the sum of $1,000; the first sum, if the testator died on or before the 9th June, 1870; the second sum, if he died after that day and before the 9th of June, 1875.
It is seen that the defendant would owe nothing to any one, if the testator survived the 9th of June, 1875; he would owe one sum if the testator survived the 9th June, 1870, and a different sum if he did not survive that day. Can it be said of such a liability, that the time of payment was certain, when it was not certain that there would be any payment to make or to be enforced; or that the demand in action arose in the lifetime of the testator, when, if his life had been prolonged beyond a certain date, there would have been no demand? There was never a time in the life of the testator, when it could be predicated upon this obligation that the defendant owed either the one or the other sum. The undertaking in its second branch was purely contingent, and might never mature.
The appellant urges that the language of the twenty-third *Page 581 
section, above cited, will not permit such a construction as is claimed for it, on the strength of the above cited decisions. The section reads thus: "In suits brought by executors, etc., demands existing against their testators, etc., and belonging to the defendant at the time of their death, may be set off by the defendant in the same manner as if the action had been brought by and in the name of the deceased." If this section is literally applied to this case, there could have been no set off of the defendant's claims against this obligation. For the demand in suit could never have been the subject of an action by and in the name of the deceased. And thus comes in the English rule, adopted and followed in this State, that the debts to be set off must be mutual. And this section is to be construed, in view of the scope of the whole act of which it is a part. That act, as the decisions say, allows only the set off of mutual debts. When the appellant seeks to come under the protection of that section, he must show that the debt sued, and the debt pleaded are mutual; that the cause of action on that sued upon arose in the testator's lifetime. Such, indeed, is the whole theory of a statute of set-off, as appears from what Lord MANSFIELD says in 4 Burrows (supra). Each party must owe the other, and each debt must be due and payable, before the smaller debt can be taken from the larger, and the difference be the only sum justly to be paid. In the case of assignees of insolvents and bankrupts, and receivers of insolvent corporations, a broader rule has been followed, but at law, that above stated has prevailed. It is true, that in Rawson, Administrator, v. Copland (3 Barb. Ch., 166), the chancellor allowed a set-off, saying that it was not necessary that it should have been actually due or liquidated at the death of the intestate, and that it was sufficient if it had become due and payable at the time of suit brought against him. That case was, however, the converse of this. It does not seem to be in harmony with the adjudications of the Supreme Court, above cited. Nor is it applicable to the peculiar facts of this cause. It is in conflict with Ketchum v. Milne (supra), and it must yield to it. *Page 582 
The reasons given, in the cases which have been decided since the Revised Statutes, are these: First. That where an action is brought by an executor, on a cause of action which arose after the testator's death, it might have been brought in the plaintiff's own name (2 Hill, supra, and cases cited in notesb and c), which is further explained in an analogous case (Smith v. Barrow, 2 T.R., 476), "because the testator never had a specific cause of action to recover that sum;" and "because the debt in such case is due to the executor, he being answerable for it to the estate; he making himself accountable for it by bringing his action." (Talmadge, Admr., v. Chapel,16 Mass., 71.) Second. That if the set-off is allowed the principle of prorata distribution provided for by the Revised Statutes (2 R.S., 87, §§ 27, 28) would be broken in upon. (Fry v. Evans, supra;Hill v. Talman's Admr., supra.) And applying the first of these reasons, it has been said that, not only need not the plaintiff sue as executor or administrator nor allege a representative character, but that if the representative character appears in the plaintiff's pleading it may be treated as a descriptio personæ, and the action be conducted and maintained as one brought to enforce the plaintiff's own right.
It seems that, so far, this case, from its peculiar facts, is brought within the terms of the rule laid down by the decisions cited, and that the defendant may not be allowed to set off the claims he held against the testator, due and payable in his lifetime.
The defendant has set up and proved another item, that of the funeral expenses of the burial of the dead body of the testator; and seeks to have the amount of these apply to diminish the recovery against him. The trial court has found that the amount thereof, $184.30, was reasonable and necessary, and that it was incurred and paid by the defendant, but came to the conclusion, which must be considered one of law, that it was not a set-off to the claim of the plaintiff.
I have no doubt but that the reasonable and necessary expenses of the interment of the dead body of one deceased, *Page 583 
are a charge against his estate, though not strictly a debt due from him. The ground of this is the general right of every one to have decent burial after death; which implies the right to have his body carried, decently covered, from the place where it lies to a cemetery or other proper inclosure, and there put under ground. (Regina v. Stewart, 12 Ad. Ell., 773, citingGilbert v. Buzzard, 2 Hagg. Consist. R., 333; see, also,Chapple v. Coope, 13 M. W., 252.) In the last case, in which an infant, a widow, was held liable on her contract for the funeral expenses of the burial of her deceased husband, it was said, that "there are many authorities which lay it down that decent Christian burial is a part of a man's own rights; and we think it no great extension of the rule to say, that it may be classed as a personal advantage and reasonably necessary to him." This right existing, the law casts upon some one the duty of seeing that it is accorded. (12 Ad. Ell., supra.) So it would seem, at common law, that if a poor person of no estate dies, it is the duty of him under whose roof his body lies, to carry it, decently covered, to the place of burial. (12 Ad. Ell.,supra.) The husband surviving is bound to bury the corpse of his wife; and in his absence, another, a relative, with whom she has lived up to her death, having directed the funeral and paid the expense, may recover it of the husband. (Jenkins v.Tucker, 1 H.Bl., 90; 13 M. W., supra; and see Ambrose v.Kenison, 10 C.B., 776.) And where the owner of some estate dies, the duty of the burial is upon the executor. (Toller Law of Exrs., 245, bk. 3, cap. 1, § 1.) And our Revised Statutes (2 R.S., 71, § 16) recognize this duty, in that the executor is prohibited from any interference with the estate until after probate, except that he may discharge the funeral expenses. From this duty springs a legal obligation, and from the obligation the law implies a promise to him who, in the absence or neglect of the executor, not officiously, but in the necessity of the case, directs a burial and incurs and pays such expense thereof as is reasonable. (Tugwell v. Heyman, 3 Camp., 298.) It is analogous to the duty *Page 584 
and obligation of a father to furnish necessaries to a child, and of a husband to a wife, from which the law implies a promise to pay him who does what the father or the husband, in that respect, omits. And so, in Rogers v. Price (3 Younge Jervis, 28), it was held that an executor, with assets, is liable to a brother of the deceased for the proper expenses of a funeral ordered and paid for by the latter in the absence of the former. In Hapgood
v. Houghton's Executor (10 Pick., 154), it was held that the law raises a promise on the part of the executor or administrator to pay for the funeral expenses as far as he has assets, and that if he have no assets he should plead that fact in bar, and that if he has, the judgment must be against them in his hands. And inAdams v. Butts (16 Pick., 343), it was held that an account for the funeral expenses of a deceased person might be set off by the defendant in action against him by an administrator for the work and labor of the deceased in his lifetime. Price v.Wilson (3 N. M., 512) is some times cited as an authority that "there is no case which goes the length of deciding that if the funeral be ordered by another person, to whom credit is given, the executor is liable." PATTERSON, J., did there use that language. But in Green v. Salmon (8 Ad. Ell., 348), he limits the expression, saying: "The judgment there probably means that the executor, where credit has been given to another person, is not liable to the undertaker; if it lays down more, the law stated is extra-judicial." See also Rappelyea v. Russel (1 Daly, 214), where the subject of the liability of a personal representative is well considered by the learned chief justice of the New York Common Pleas.
To a claim for the payment of such expenses by an executor, the objection does not lie that the rule of distribution of assets will be improperly interfered with if the claim is allowed and paid. Unless there is some objection arising out of statutory provisions, these expenses must be preferred to all other debts (Toller on Exrs., 245), not excepting debts due by record, even to the sovereign. (Parker v. Lewis, 2 Devereux [S.C.], 21.) Even in the case of an insolvent *Page 585 
estate, the executor has been allowed the reasonable expenses of the funeral of his testator, on a plea of plene administravit. (Edwards v. Edwards, 2 Cr. M., 612.)
No statutory provisions are now in mind which interpose an obstacle. Though our statute of payment of debts and legacies (2 R.S., p. 87, § 27) gives the order in which the executor shall make payment of debts against the estate, and though there is no provision there for a priority of payment of funeral expenses, it is not to be held therefrom that the common-law rule is abrogated. Those expenses are not to be treated as a debt against the estate, but as a charge upon the estate, the same as the necessary expenses of administration. (Fitzhugh v. Fitzhugh,
11 Gratt., 300.) The expenses of probate of will precede the formal authority to the executor, but are allowed to him on an accounting. So should funeral expenses be. The decent burial of the dead is a matter in which the public have concern. It is against the public health if it do not take place at all (Rex
v. Stewart, supra), and against a proper public sentiment, that it should not take place with decency. (Kanasan's Case, 1 Greenl., 226; see Jones v. Ashburnham, 4 East, 460; Regina
v. Fox, 2 Q.B., 246.) The Revised Statutes, already cited, impliedly give discretion that the executor, even before probate, shall pay the funeral charges; and notwithstanding the statute setting out the order of payment, if he follows that direction or that authority, the amount will be allowed to him as part of the expenses of his trust, with the restriction always that the amount is no greater than is necessary. And if they are paid by another than the executor, and reimbursed by or collected of the latter, there must be the same result. It follows that the defendant is entitled to be paid from the assets of the estate in the hands of the plaintiff, the amount which he has incurred and paid for funeral expenses. In Adams v. Butts (supra), it was held that they might be set off against a claim upon the defendant arising in the intestate's lifetime. In Myer v.Cole (12 J.R., 349), however, it was held that a declaration against executors in which there was a count on promises of their testatrix in *Page 586 
her lifetime, and a count for funeral expenses furnished at the request of the defendants described as executors, was bad; that the counts were improperly joined, and would require a different judgment. And in Smith, Administrator, v. Lockwood (10 J.R., 366), it was held, that in an action before a justice of the peace, where the defendant established a set-off, judgment therefor was properly given against the plaintiff personally. This has been altered by statute (2 R.S., p. 355, § 24), and now, in such cases, judgment goes against the plaintiff in a representative character. (And see Ferrier v. Myrick,41 N Y, 321.) Can the defendant set off these expenses in this action? His cause of action is against the plaintiff, on a promise implied by law from her. He had no cause of action therefor, against the testator. As the cause of action against the defendant, arose after the death of the testator, and to the plaintiff, it appears that the two demands are mutual debts, respectively due to and from defendant, and to and from the plaintiff in the same capacity. This demand may therefore be set off.
The judgment appealed from, must be modified so as to allow to the defendant, in diminution of the amount of the claim established against him, the sum of $180.30. He is also entitled to the interest thereon. There is no day named in the findings or in the testimony on which the sum was paid by the defendant. He alleges in his answer that the claim was assigned to him on the 25th April, 1872, and if interest is reckoned from that date, it will not be unjust to him.
The judgment so modified, should be affirmed, without costs to either party in this court.
All concur, except GROVER, J., dissenting.
Judgment accordingly. *Page 587