In the Matter of the Estate of SIMON KRAEMER, Deceased.

Surrogate's Court, Bronx County, March 8, 1944.

*Abraham D. Levy* and *Hamilton McInnes* for State Tax Commission.

*Lester Lewis Jay* and *Morris J. Goldston* for Mathilde Kraemer, as executrix.

HENDERSON, S. This is an appeal by the State Tax Commission from the *pro forma* order entered on the 18th day of October, 1943, fixing a tax in this estate.

The decedent died on May 3, 1943, leaving a will which bequeathed his entire estate to his widow. No property passed to her pursuant to the terms of such will however, because all of decedent's property consisted of deposits in banks, stock certificates and mortgage-participation certificates, all in the

joint names of the decedent and his widow with a right of survivorship. The value of such property jointly held amounted to $28,069.71. The widow was also the beneficiary of two insurance policies to the extent of $3,000.

The State Tax Commission contends that the sum of $894.75, the total of funeral and administration expenses, was erroneously allowed as a deduction in determining the value of the net estate for the purpose of tax in that subdivision 1 of section 249-s of the Tax Law does not permit such a deduction. The pertinent part of such subdivision reads as follows: " There shall be disallowed the amount by which the deductions specified in clauses (a), (b), * * * of this paragraph exceed the value, at the time of the decedent's death, of property subject to claims. For the purposes of this paragraph, the term ' property subject to claims ' means property includible in the gross estate of the decedent which, or the avails of which, would, under the applicable law, bear the burden of the payment of such deductions in the final adjustment and settlement of the estate ".

The executrix on the other hand contends that the transactions of the decedent in placing all of his assets in jointly held accounts and property thereby stripping himself of all assets with which funeral and administration expenses might be paid, are fraudulent and void to the extent necessary to pay such expenses.

An examination of the cases cited by executrix as authority for her contention, discloses that with the exception of one of them, they dealt with the so-called " Totten " savings bank trusts which were not revoked. The remaining case dealt with deposits made by the husband in banks in the name of his wife. These cases restate the principle of law that " One may no more get his money out of reach of his creditors after his death by depositing it in such a way, not to belong to his *cestui* until he dies, than he could do so by means of a will giving it to such *cestui*." (*Beakes Dairy Co.* v. *Berns,* 128 App. Div. 137, 139.) One of the cases allowed reasonable administration and funeral expenses of a decedent to be charged against the funds of a " Totten " trust, where the general assets of the estate were insufficient. (*Matter of Reich,* 146 Misc. 616.)

This decedent died leaving no creditors. A person with a claim for funeral expenses is not a creditor of the departed (*Matter of Vitelli,* 146 Misc. 17, 19). Furthermore, the case at hand deals with jointly held property and not " Totten " trusts.

" While circumstances might readily be envisaged which would make the form of the accounts in which a deceased person held his funds immaterial to the question of liability for undischarged debts and funeral expenses there is patently a difference between the status of a true joint tenant of a bank account and that of a prospective beneficiary of a Totten trust.  *  *  *
It is in the nature of a joint account that each party thereto is the owner in legal theory not only of a moiety but of the whole (*Moskowitz* v. *Marrow,* 251 N. Y. 380, 389–390) and that in law the joint owners are one person.  In the case of the so-called Totten trust, ownership by the beneficiary is purely tentative unless there be actual delivery of the bank book in the lifetime of the creator of the trust or like completion of the donation or unless the trust becomes operative by reason of the death of the real owner of the fund.  The latter's title continues unimpaired until death supervenes (*Matter of Totten,* 179 N. Y. 112, 126)." (*Matter of Haggerty,* 38 N. Y. S. 2d 433.)  This distinction is not limited merely to bank accounts.  It would apply with respect to any property jointly owned (Schouler on Personal Property [5th ed.], p. 224).

The executrix has not furnished any authority for her contention nor has the independent research of the court disclosed any case in which a funeral expense of a decedent was made a charge upon property jointly owned by him.

The court is not unmindful of the fact that the burial of the dead is not only a common-law duty in the interests of public health and decency (*Patterson* v. *Patterson,* 59 N. Y. 574, 582, 586), but it has been made a statutory duty which may devolve even upon strangers (Penal Law, § 2211).  However, there is no basis in law for charging a joint tenant with the expense of such burial merely because of joint ownership with a decedent, where there are insufficient estate assets.  No fraud has been perpetrated in the creation of the joint tenancies.  As was said in *Phillips* v. *Wooster* (36 N. Y. 412, 413) : "Subsequent indebtedness cannot be invoked, to make that fraudulent, which was honest and free from impeachment at that time."  It has been held in *Matter of Vitelli* (146 Misc. 17, *supra*) that an undertaker who buries the remains of the decedent may not, on the theory of an implied fraud, charge a gift *causa mortis* with the reasonable funeral expenses where no separate estate of the decedent existed.  Assuming that a decedent could possibly have intended to defraud a person incurring burial expenses by the creation of joint tenancies, such intention would be immaterial.  Where all that the law requires for the creation

of joint ownership has taken place, the intention of the decedent makes no difference. (*Inda* v. *Inda*, 288 N. Y. 315).

There is nothing in the applicable law which would impose upon any of the property included in the gross estate, the deductions for funeral and administration expenses.

The appeal of the State Tax Commission is sustained. The *pro forma* order is modified accordingly.

Settle order in accordance herewith.