THOMAS MCKIBBEN et al., Plaintiffs, *v.* FRANK MCKIBBEN et al., Defendants.

Municipal Court of the City of New York, Borough of Queens, December 24, 1952.

*Joseph A. Mitschel* for plaintiffs.
*Francis X. Smith* for defendants.

FITZPATRICK, J. The parties to this action, both plaintiffs and defendants, are brothers and sisters. Judgment has been entered by default against the defendant Frank McKibben and the action was thereupon severed and proceeded to trial against the defendant Robert McKibben only. The facts as they appear from the evidence are these: the father of all parties to this action died while he was living with the plaintiff Madeline Golker; that there survived him seven children, including the parties to this suit; that the evidence also shows that the brothers and sisters were not on good terms with this defendant, Robert McKibben. The evidence also indicates he was not consulted about any of the arrangements at the time they were made, and giving the evidence of the plaintiffs full weight, the subject was not brought to his attention until the body of the father was in the funeral parlor. The testimony of the plaintiff Madeline Golker is that the father had been living with her up to and including the time of his death, that she and the other plaintiff made the arrangements with the undertaker for the burial of their father. She also admitted that the father had a small industrial insurance policy amounting to about $300 which she and the other plaintiff on their own responsibility permitted the undertaker to apply to a prior debt which was owed to the undertaker for a prior funeral, presumably for the mother's burial. All this was done without the knowledge or consent of the defendant Robert McKibben, their excuse being that they did not know where to reach him at the time and they were faced with a situation where they had to act quickly. Mrs. Golker thereafter testified that when the defendant Robert McKibben came to the funeral parlor she overheard her brother Thomas and the others asking him whether or not he would pay his share of the expenses as the others had agreed to do which amounted to $150 each if it were equally divided among them, and she claims she heard him say words to the effect, "I wasn't consulted about any arrangements but I am willing to pay my share." This is contradicted by the defendant Robert McKibben, who says it is true that they did speak to him but that he said, "I had nothing to do with it and I am not going to pay any part of it." As a consequence they brought this suit to enforce the payment of his prorata share of the burial expenses of the father, amounting to $150.

The first question to be determined is whether or not there is any duty on any one of the children to bury their deceased father and if so, how far that duty extends and whether or not

the liability or expense incurred therefor may be prorated among kin of equal degree.

Counsel for the plaintiffs has cited no cases to the court. Counsel for the defendants, while citing no cases, has stated in his opinion that there may be a moral duty but no legal duty on the part of the defendant Robert McKibben to pay anything.

Independent research of the court shows that section 2211 of the Penal Law states merely: " Except in the cases in which a right to dissect is expressly conferred by law, every dead body of a human being, lying within this state, must be decently buried or incinerated within a reasonable time after death."

The statute, however, as can be seen from a reading of it, is silent as to who is to bury or incinerate the body or by whom the liability for any expense incurred therefor is to be borne. Consequently, we are thrown back upon the case law and this court has found in the reports the case of *Patterson* v. *Patterson* (59 N. Y. 574, 582-583) in which the court states as follows: " I have no doubt but that the reasonable and necessary expenses of the interment of the dead body of one deceased, are a charge against his estate, though not strictly a debt due from him. The ground of this is the general right of every one to have a decent burial after death; which implies the right to have his body carried, decently covered, from the place where it lies to a cemetery or other proper enclosure and there put under ground. (*Regina* v. *Stewart*, 12 Ad. & Ell., 733, citing *Gilbert* v. *Buzzard*, 2 Hagg. Consist. R., 333; see, also, *Chapple* v. *Coope*, 13 M. & W., 252.) In the last case, in which an infant, a widow, was held liable on her contract for the funeral expenses of the burial of her deceased husband, it was said, that ' there are many authorities which lay down that decent Christian burial is a part of a man's own rights; and we think it no great extension of the rule to say, that it may be classed as a personal advantage and right necessary to him.' This right existing, the law casts upon someone the duty of seeing that it is accorded. (12 Ad. & Ell., *supra*.) So it would seem, at common law, that if a poor person of no estate dies, it is the duty of him under whose roof his body lies, to carry it, decently covered, to the place of burial. (12 Ad. & Ell., *supra*.) The husband surviving is bound to bury the corpse of his wife; and in his absence, another, a relative with whom she has lived up to her death, having directed the funeral and paid the expenses, may recover it of the husband. (*Jenkins* v. *Tucker*, 1 H. Bl., 90; 13 M. & W., *supra*; and see *Ambrose* v. *Kenison*, 10 C. B., 776.) "

To the same effect see *Finley* v. *Atlantic Transport Co.* (220 N. Y. 249, 255–256) in which the court cites with approval the *Patterson* case and states: '' At common law it is the duty of an individual under whose roof a poor person dies to carry the body decently covered to the place of burial and to refrain from doing anything which prevents in anywise a suitable burial. The body cannot be cast out so as to expose the same to violation or to offend feelings or injure the health of the living.''

This fairly casts a duty of seeing that the father was decently buried upon the plaintiff, Madeline Golker, under whose roof the father died. Since there was no surviving spouse there is no one whom she in turn could charge for the expenses of the burial. (See *Foley* v. *Phelps*, 1 App. Div. 551.) She and the other brothers, having elected to dissipate the little estate of the father's, to wit, the proceeds of the industrial insurance policy (by turning the same over to the undertaker to pay for a previous debt owed by the father), left themselves without any estate belonging to the father from which they could seek reimbursement. The question, therefore, remains whether or not in the absence of any rule of law requiring the brother, Robert McKibben, to pay anything, whether he can be made to pay his proportionate share, since he was not consulted nor took any part in the negotiations by the other children of the deceased father.

Whatever the moral situation involved, the court can find no legal duty on the part of Robert McKibben to contribute anything to the cost of the burial of his father. The corpse did not die under his roof. Consequently there was no duty upon him to bury his father and in the absence of any duty, the court does not see how he can be charged with any expense by the person with whom the primary duty does lie in this case, viz., Madeline Golker. The only way any liability could attach at all would be by agreement between the parties, which agreement is absolutely denied by the defendant Robert McKibben. In view of his unqualified denial and in the absence of any rule of law compelling him to share any part of the expenses for the burial of his father, the court is constrained to find in his favor and to dismiss the complaint on the merits.