---

### In re NIEDERSTEIN et al.

(Supreme Court, Appellate Division, Second Department. December 13, 1912.)

EXECUTORS AND ADMINISTRATORS (§ 261*)—ORDER OF PAYMENT OF DEBTS—DEBTS DUE THE STATE.

Laws 1893, c. 686, relating to order of payment of debts of a decedent, and providing that no preference be given one debt over another of the same class, does not abrogate the state's common-law right to a preference as to money held by decedent as an officer and due to it in a sovereign capacity, which cannot be taken away, except by express provisions of statute.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 944–974; Dec. Dig. § 261.*]

Appeal from Order of Surrogate, Queens County.

Settlement of the account of Louis Niederstein and others, as executors of John Niederstein, deceased. From an order directing order of payment, Louisa Niederstein, as guardian, etc., and others, appeal. Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, THOMAS, and CARR, JJ.

Leon N. Futter, of Brooklyn, for appellants.

Alfred J. Gilchrist, of Brooklyn, for respondent executors.

Edward R. Finch, of New York City (Thomas McMorrow, of New York City, on the brief), for receiver.

Robert P. Beyer, Deputy Atty. Gen., for the People.

CARR, J. This appeal brings up for consideration the question to what extent, if any, the state is entitled to a priority or preference in payment of its claims against the estate of a decedent, whose assets are sufficient to pay in full the claims of creditors established against it. The decedent, John Niederstein, died a resident of the county of Queens, leaving a last will and testament. Among his admitted debts was a claim resting upon a judgment entered against him before his death, a further claim for moneys received by him as the general guardian of an infant, and a claim in favor of the state of New York for moneys received for the state as taxes paid on the recording of mortgages while the decedent was county clerk of Queens county. A large number of claims of various natures were likewise admitted, but they are not concerned in this appeal. The assets of the decedent are in-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sufficient to pay in full all of these claims, and in fact, if the claim of the state for a preference in payment to it next in order to the judgment referred to be allowed, then the claim in favor of the infant can be met but partly, and the remainder of the admitted claims must go unpaid even in part.

After a hearing in the accounting proceedings, the surrogate made an order directing the executors to pay first and in full the claim of the judgment creditor; and, second, to the extent of remaining assets, the claim of the state of New York; and, third, to the extent of such assets then remaining, the claim of the infant of whose estate the decedent had been the general guardian. The order so entered provided, however, that the infant should have permission—

"to follow up the guardianship funds, if she can find them, and to the extent of the funds that she finds she may have a first preference over the said people of the state of New York."

From that part of the order which grants a preference generally to the state over the claim of the infant as a creditor of the decedent, the infant, through those representing her, has appealed to this court.

It is the contention of the appellant that the whole subject-matter of priority or preferences in payment of debts of a decedent is covered by and regulated exclusively by section 2719 of the Code of Civil Procedure, while the state contends that this section must be so construed as not to abrogate the common-law prerogative right of the sovereign to a preference in the payment of his claims over that of any other creditor. The provisions of the Code of Civil Procedure now in question were added by chapter 686 of the Laws of 1893, and were a consolidation, without amendment or material change, of various sections (beginning with section 26) of article 2, c. 6, pt. 2, of the Revised Statutes as enacted in 1829. The statute as it now stands reads, so far as material to the question before us, as follows:

"Every executor and administrator must proceed with diligence to pay the debts of the deceased according to the following order:

"1. Debts entitled to a preference under the laws of the United States.

"2. Taxes assessed on the property of the deceased previous to his death.

"3. Judgments docketed, and decrees entered against the deceased according to the priority thereof respectively.

"4. All recognizances, bonds, sealed instruments, notes, bills and unliquidated demands and accounts.

"Preference shall not be given in the payment of a debt over other debts of the same class, except those specified in the third class. A debt due and payable shall not be entitled to a preference over debts not due. The commencement of a suit for the recovery of a debt or the obtaining a judgment thereon against the executor or administrator shall not entitle such debt to preference over others of the same class. Debts not due may be paid according to the class to which they belong, after deducting a rebate of legal interest on the sum paid for the unexpired term of credit without interest. An executor or administrator shall not satisfy his own debt or claim out of the property of the deceased until proved to and allowed by the surrogate; and it shall not have preference over others of the same class. Preference may be given by the surrogate to rents due or accruing on leases held by the testator or intestate at the time of his death, over debts of the fourth class, if it appear to his satisfaction that such preference will benefit the estate of the testator or intestate."

This provision of statute, as enacted originally in 1829, differed but slightly, and practically in verbal expression mainly, from that proposed to the Legislature by the revisers. In referring to the chapter proposed for enactment as to "Wills and Testaments, of the Distribution of the Estates of Intestates and of the Rights, Powers and Duties of Executors and Administrators," the revisers reported to the Legislature in language as follows:

"The following chapter will be found to contain new provisions, of a greater number, extent, and importance, than any that has been presented to the Legislature. From all quarters of the state, the revisers have heard complaints of the defects of the existing law, upon the subject of wills and executors and administrators, and numerous amendments have been suggested to them. They have bestowed their utmost attention, and have exerted all the faculties they possess, in an effort to reduce this branch of the law into some order, to condense the floating practice and decisions, to settle the most vexed and perplexing questions, and to present to every man, who is called upon to act as an executor or administrator, a plain and practical guide for his conduct." Revisers' Notes, Appendix to 3 R. S. p. 625 et seq.

In the English law, the common-law courts had no direct concern with the administration of the estates of decedents. Such common-law rules as bore upon this question were worked out in common-law actions of devastavit, by a creditor of a decedent against his executor. In such actions the usual defense was that of plene administravit. The common-law courts, however, slowly formulated a rule as to priority in the order of payment of debts by which the defense of plene administravit was to be tested, and, if an executor paid debts out of the order of payment, then, in default of sufficient assets to pay all creditors, he was held liable in devastavit in favor of an unpaid creditor whose claim was prior in order.

As early as the reign of Edward IV, the order of payment had been worked out as follows:

"Debts of record came first, then debts by specialty, and lastly other debts; and in any class of debts those owing to the king had priority." 3 Holdsworth's "History of English Law," p. 460.

In Bacon's Abridgments, title "Executors and Administrators," the order of payment was stated as follows:

"The better to consider the order which the law prescribes for the payment of debts, and the duty enjoined executors and administrators in discharging themselves of the assets of the deceased, which they must observe at their peril, it is necessary to take notice, that these debts are divided into three sorts: 1. Debts by record. 2. Debts by specialty. 3. Debts by simple contract. Debts by record, which are to have the first precedency, are again divided into debts due the crown, debts by judgments obtained in any court of record, and debts by recognizances, statutes merchant or staple. Of these the highest in its nature is the king's debt, and his prerogative to be preferred before other creditors arises from the regard the law hath to the public good beyond any private interest. * * * But the debts due to the crown, which are to have a precedency, must be understood of debts by matter of record; and therefore sums of money due to the king upon wood sales, sales of tin, or other his minerals, for which no specialty is given, are not to be preferred to the subject's debt by matter of record."

More than a century later Blackstone describes the order of payment as follows:

"The executor or administrator must pay the debts of the deceased. In payment of debts he must observe the rules of priority; otherwise, on deficiency of assets, if he pays those of a lower degree first, he must answer those of a higher order out of his own estate. And, first, he may pay all funeral charges, and the expense of proving the will, and the like. Secondly, debts due to the king on record or specialty. Thirdly, such debts as are by particular statutes to be preferred to all others [giving examples]. Fourthly, debts of record; as judgments (docketed according to the statute," etc.), "statutes and recognizances. Fifthly, debts due on special contracts; as for rent * * * or upon bonds, covenants, and the like, under seal. Lastly, debts on simple contracts, viz.: Upon notes unsealed and verbal promises." 1 Blackstone's Commentaries (Cooley's Edition), star page 511.

Thus, when our Revised Statutes were enacted, the common-law rules, which by the express provision of our first Constitution of 1777 had become a part of the law of this state, gave to the sovereign a right of payment of his claims against the estate of a decedent prior to that of any creditor whose claim was of the same class as that of the sovereign. Was this right—prerogative right, as it is sometimes called—abrogated or continued under the Revised Statutes as enacted in 1829?

A proper answer to this question is not without its difficulty, especially so as the question arises now, apparently, for the first time in this state, notwithstanding the long lapse of years. It may be interesting to note that as recently as 1877 a writer in the Albany Law Journal on the subject of "The State as a Creditor" (16 Alb. Law J. 298) pointed out that at the time of his writing there had been no decision of any appellate court in this state on the general subject; the only then reported opinion being a Special Term opinion of the Court of Common Pleas in the county of New York. Nor, as was there further pointed out, was there then any decision of the United States Supreme Court asserting a prerogative right in the United States to a preference to payment of debts due to it; for, while such preference had been asserted previously by a decision of that court (U. S. v. Fisher, Assignees of Blight, 2 Cranch, 358, 2 L. Ed. 304), it had been made to rest upon a specific statute of the United States, without reference to any claim of a prerogative right of preference. As the revisers well said in their report to the Legislature in 1828 and 1829, the whole subject of the duties of executors and administrators under the common law, as it then stood in this state, was involved in uncertainty and vagueness amounting to little more than chaos. They did, as they said, recommend a new arrangement, and the Legislature on their recommendation did enact new provisions or a new order of provisions, most of which swept away entirely many then existing common-law rules.

Among the common-law rules so abrogated were those that absolved a sole executor from paying his debt to the estate of his decedent, and that which allowed an executor to retain from the estate of the decedent in full such debt as was due him by the decedent, and that also which permitted the executor to prefer by payment in full any creditor over those whose claims were of the same class. It may be difficult for a lawyer of this generation to believe that rules such

as those enumerated ever existed at common law. When the subject of the order of payment of debts was taken up, changes of order were deemed advisable.

The first preference was given in the "order of classes" to "debts entitled to a preference under the laws of the United States." The next preference in order was that of "taxes assessed upon the estate of the deceased previous to his death." Then, third, "judgments docketed, and decrees entered against the deceased according to the priority thereof respectively." Fourthly in order of preference were "all recognizances, bonds, sealed instruments, notes, bills and unliquidated demands and accounts." In this new class the common-law distinction between recognizances, specialties, and simple contracts was abolished, and all were placed upon the same footing. In their note on this particular subject the revisers reported as follows:

"The law respecting the order of payment is preserved, except in the case of specialties or sealed instruments, which are reduced to the same class with notes, etc. If there was any reason for giving them a preference arising from the supposed sanctity of a seal, or the inability of men to write, it would seem to have passed."

Thus the sovereign's or any other creditor's claim on a specialty became of the same class as an ordinary claim of a creditor on a simple contract. It is argued, therefore, that the common-law right of preference over debts of the same class must be deemed to have been abrogated, especially in view of the fact that this statute gave the state a preference for taxes assessed during the lifetime of the decedent, and was silent as to any other right of preference, and to the further circumstance that the statute declared expressly that:

"No preference shall be given in the payment of any debt over any other debts of the same class, except these specified in the third class" (i. e., judgments and decrees entered against the deceased).

This argument presents a question of legislative intent, and in considering it we are to be guided by the settled rules of statutory interpretation. We come to the determination of this question with the knowledge that the formulation of the Revised Statutes was done by a body of men consisting of some of the most eminent lawyers known to the legal history of this state, and men who were thus familiar with the existing rules of statutory construction. They knew well that at common law the debt due the sovereign was preferred in order over debts of the same class. If they intended that this prerogative right should be abrogated, we should expect to find them saying so, especially as they knew well that according to common-law rules of interpretation no prerogative right of the sovereign was to be deemed affected by a statute unless the intent appeared expressly. Yet we find them saying: "The order of payment is preserved" as to debts of a class next in order to judgments. Again, the declaration of the statute that "no preference shall be given in the payment of any debt over other debts of the same class, except those specified in the third class," while apparently comprehensive in terms, has no necessary application beyond the fact that at common law, the king's claim excepted, executors might prefer, by payment in full, any debt

of one class to the exclusion of other debts of the same class, without subjecting themselves to a liability in an action of devastavit, and that this common-law rule was thereby expressly abrogated.

In the case at bar the claim of the state arises from a misappropriation of the public moneys of the state due to it in its sovereign capacity and collected as taxes by the decedent as a public functionary, who was but a mere duct between the taxpayer and the sovereign. That it now has, as it did have at common law, a preferential right to payment from the estate of the decedent, except as taken away by express provisions of statute, we deem to be the established rule. U. S. v. Herron, 87 U. S. (20 Wall.) 251, 22 L. Ed. 275. Whether this should be the rule in this country as to debts due the sovereign in a private or proprietary character is not up for decision now, and its decision may await its necessity.

The recent decision of the Court of Appeals in Matter of Carnegie Trust Co., 99 N. E. 1096, settles finally in this state that the state has a preference over general creditors against the funds of an insolvent trust company on its claim for public moneys on deposit with the insolvent corporation, and this recent decision is made to rest squarely on the doctrine that such preference, though not given expressly by statute, is a prerogative right of the state as the successor of the English crown. It would be a strange anomaly that the state should have this right against general creditors if the debtor was a living insolvent, and should not have it against general creditors if the debtor were dead and his estate found insolvent when it came to be administered.

Our attention is called to the recent decision of the United States Supreme Court in Guarantee Title & Trust Co. v. Title Guaranty & Surety Co., 224 U. S. 152, 32 Sup. Ct. 457, 56 L. Ed. 706. In that case a claim of the United States was held not to have a preference in bankruptcy over claims of laborers of the bankrupt. The decision went, however, upon the order of preferences contained in the Bankruptcy Law, where the claims of laborers were given a preference in payment over the claims of the United States in the order of preference specified in the act under consideration. In the former statutes on that subject, a preference was given expressly to the United States prior in order over other claimants, while in the present statute, which contains a full schedule of preferences, the preference of claims of the United States is set forth in later order than that given to claims of laborers, and it was held that the change so made in the specification of the order of preference should be deemed to indicate a change in legislative purpose. The court, however, recognized the general rule that the "sovereign is not bound by the general language of a statute, and is not bound by the provision of an insolvency law, unless specifically mentioned therein," saying, among other things, as to this rule: "The proposition is established." 224 U. S. 155, 32 Sup. Ct. 458, 56 L. Ed. 706.

We are of opinion, therefore, that the order should be affirmed, but, as the question is novel and the circumstances peculiar, without costs. All concur.