In the Matter of the Final Accounting of the Administrator of ARTHUR L. STILES, Deceased.

Surrogate's Court, Westchester County, March 9, 1926.

**Executors and administrators — priority of claims — funeral expenses are charge upon decedent's estate and have priority under Surrogate's Court Act, § 216, over income taxes due Federal government, notwithstanding U. S. Rev. Stat. § 3466 — common-law rule continued.**

A claim for reasonable funeral expenses is entitled to priority over a claim of the Federal government for income taxes, for the reason that funeral expenses are a charge upon decedent's estate and shall be preferred to all debts and claims against the deceased under section 216 of the Surrogate's Court Act which continues the common-law rule.   There is no conflict between sections 212 and 216 of the Surrogate's Court Act.

Section 3466 of the United States Revised Statutes, giving priority to debts due to the United States government, has no application for the reason that funeral expenses, as claims, are not in the same category as debts owing by a decedent.

PROCEEDING for an accounting which involves the priority of claims.

*Henry R. Barrett*, for the petitioner.

SLATER, S. The decedent died December 29, 1923, intestate, leaving a personal estate consisting of $387.85. He left no real estate. There has already been paid for administration purposes the sum of $45.40. The funeral bill of $310.85 has not been paid. There are other claims for goods, wares and merchandise sold to decedent, amounting to $174.05. There is also a claim of the United States of America for income taxes for the years 1919 and 1921, amounting to the sum of $183.84, and interest at the rate of one per cent per month until paid. The accounting party sets forth that this is a preferred claim under section 3467 of the United States Revised Statutes. The account has been made upon the theory that the United States of America has a preferred claim. Why preferred to funeral charges and not to administration expenses is not made clear.

It is my opinion that the theory of the account with regard to priorities is erroneous. There is no one contending for the undertaker, but it is the purpose of the court to endeavor to apply this small personal estate according to the law as the court interprets it. The cases upon the question of conflict between the claims of a sovereign and an undertaker are meagre.

Section 212 of the Surrogate's Court Act provides for the payment of *debts* according to the following order: *First*, debts entitled to a preference under the laws of the United States and the State of New York; *second*, taxes assessed on property of the deceased previous to his death; *third*, judgments docketed and decrees entered against the deceased, according to the priority thereof respectively; *fourth*, recognizances, bonds, sealed instruments, bills and unliquidated demands and accounts; with the further statement that preference shall not be given to the payment of a debt over other debts of the same class, except those specified in the third class.

Section 216 of the Surrogate's Court Act provides: " Every executor or administrator shall pay, out of the first moneys received, the reasonable funeral expenses of decedent, and the same shall be preferred to all debts and claims against the deceased."

The casual reader will say there is a conflict in these sections.

The priority claim of the United States of America is founded

upon section 6372 of the United States Compiled Statutes of 1918, being section 3466 of the United States Revised Statutes, which provides: " Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executor or administrators is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied   *   *   *."

Mr. Justice CARR of the Second Department in *Matter of Niederstein* (154 App. Div. 238) wrote an illuminating opinion upon the early law regarding the general subject of priority of payment. In that case there was contention between the general creditors and those claiming under a judgment. He stated that as early as the reign of Edward IV (1551), debts owing to the Crown had priority. Debts of record came first, being divided into debts due the Crown, debts by judgment and debts by recognizances, statutes merchant or staple. Of these the highest in its nature is the King's debt and his prerogative to be preferred before creditors arises from the regard the law has for the public good beyond any private interest.

More than a century later, Blackstone in his Commentaries prescribed the order of payment as follows: " The executor or administrator must pay the debts of the deceased. In payment of debts he must observe the rules of priority; otherwise, on deficiency of assets, if he pays those of a lower degree first, he must answer those of a higher out of his own estate. And, first, he may pay *all funeral charges, and the expense of proving the will, and the like.* Secondly, debts due to the King on record or specialty. Thirdly, such debts as are by particular statutes to be preferred to all others [giving examples]. Fourthly, debts of record; as judgments (docketed according to the statute, etc.), statutes and recognizances. Fifthly, debts due on special contracts; as, for rent,   *   *   *   or upon bonds, covenants, and the like, under seal. Lastly, debts on simple contracts, viz.: upon notes unsealed and verbal promises." (1 Black. Comm. [Cooley's ed.] *511.)

" Thus, when our Revised Statutes were enacted, the common-law rules, which by the express provision of our first Constitution of 1777 (Art. 35) had become a part of the law of this State, gave to the sovereign a right of payment of his claims against the estate of a decedent prior to that of any creditor whose claim was of the same class as that of the sovereign.   *   *   *   In the case at bar the claim of the State arises from a misappropriation of the public moneys of the State due to it in its sovereign capacity and collected as taxes by the decedent as a public functionary." (*Matter of Niederstein, supra.*) The court held as between a judgment cred-

itor and the State that there was a common-law right of the State to a preference, except as taken away by express provisions of statute.

The court raised the query "Whether this should be the rule in this country as to debts due the sovereign in a private or proprietary character is not up for decision now, and its decision may await its necessity."

*Patterson* v. *Patterson* (59 N. Y. 574) relates to priority of a claim for reasonable and necessary funeral expenses and a claim secured by bond and mortgage. Judge FOLGER said: "I have no doubt but that the reasonable and necessary expenses of the interment of the dead body of one deceased, are a charge against his estate, though not strictly a debt due from him. The ground of this is the general right of everyone to have decent burial after death; which implies the right to have his body carried, decently covered, from the place where it lies to a cemetery or other proper enclosure and there put under ground. [Cases cited.]   *   *   * So it would seem, at common law, that if a poor person of no estate dies, it is the duty of him under whose roof his body lies, to carry it, decently covered, to the place of burial.   *   *   * From this duty springs a legal obligation, and from the obligation the law implies a promise to him who, in the absence or neglect of the executor, not officiously, but in the necessity of the case, directs a burial and incurs and pays such expense thereof as is reasonable.   *   *   * To a claim for the payment of such expenses by an executor, the objection does not lie that the rule of distribution of assets will be improperly interfered with if the claim is allowed and paid. Unless there is some objection arising out of statutory provisions, these expenses must be preferred to all other debts (Toller on Exrs. 245), not excepting debts due by record, even to the sovereign. (*Parker* v. *Lewis*, 2 Devereux N. C. 21.)"

With regard to the preference of the United States government, the court in *U. S.* v. *Hahn* (37 Mo. App. 580), after reciting section 3466 of the Revised Statutes, decided that "These sweeping provisions have been equitably limited by the judicial construction of the Federal Courts, so as to deprive them of all hardship. It is now settled   *   *   * that the claim of the United States is entitled to no precedence over the widow's dower or allowances (*Postmaster General* v. *Robbins*, 1 Ware, 165, 167), nor over costs and expenses of administration (*United States* v. *Hunter*, 5 Mason, 229, 230)."

In *Sullivan* v. *Horner* (41 N. J. Eq. 299) the court said: "Not only do the usages and necessities of society require this at his hands [the burial of the dead], but it is a requirement of the law

MATTER OF STILES. **719**

Misc. 715]    Surrogate's Court, Westchester County. March, 1926.

also. * * * Funeral expenses are, by the common law, to be first paid out of the assets. (11 Vin. Abr. 432.) And they are by law, in England, preferred in payment to a debt due the Crown. (2 Wms. Exrs. 988.) And in this country, to a debt due to the United States government. (*United States* v. *Eggleston*, 4 Sawy. 199.) By our statute, they are among the preferred claims. * * * They are entitled to preference * * * as they are at the common law. The statute does not take away the absolute preference which the common law accorded. The reason for such absolute preference still exists in full force."

The United States Circuit Court in *U. S.* v. *Eggleston* (4 Sawy. 199; Fed. Cas. No. 15,027, said): " The two items of taxes and funeral charges are ' not debts due from the deceased,' but charges imposed by the law of the State which the administrator is bound to discharge in the performance of his trust before satisfying any claim of the United States as a creditor;" citing *U. S.* v. *Hunter* (Fed. Cas. No. 15,427; affd., *Hunter* v. *U. S.*, 5 Pet. 173).

In *Parker* v. *Lewis* (13 N. C. [2 Devereux, Law] 21) the court said: " Funeral expenses are to be paid in preference to any other debt, out of the assets of the deceased, not excepting debts due by record, even to the sovereign."

There is no statutory provision which interposes an obstacle, though the Surrogate's Court Act gives the order in which the executor shall make payment of *debts* against an estate and though there is no provision there for a priority of payment of funeral expenses, it is not to be held that the common-law rule is abrogated. The funeral expenses are not to be treated as a *debt* against the estate, *but* as a *charge* upon the estate, the same as the necessary expenses of administration. The court in *Patterson* v. *Patterson* (*supra*, 585) said: " The expenses of probate of will precede the formal authority to the executor, but are allowed to him on an accounting. So should funeral expenses be. The decent burial of the dead is a matter in which the public have concern. It is against the public health if it do not take place at all * * * and against a proper public sentiment, that it should not take place with decency."

The executor, even before probate, may pay the funeral charges and notwithstanding the statute setting out the order of payment of debts, if he follows that direction, or that authority, the amount will be allowed to him as part of the expenses of his trust, with a restriction that the amount is no greater than is necessary. The funeral expense and the expense of administration are in no sense debts of the testator. (*Matter of Franklin*, 26 Misc. 107, 111.) A funeral bill is not a debt against the estate, but a charge against

the estate. This preference is founded upon public policy. (*Matter of Ellis*, 110 Misc. 192.) The expenses of a funeral are not strictly a debt due from the decedent. (*Barter* v. *Hawksworth*, 102 Misc. 242.)

Referring to former section 2718 of the Code of Civil Procedure (as amd. by Laws of 1893, chap. 686), which related to reference of claims against estates, Mr. Justice JENKS in *Genet* v. *Willock* (93 App. Div. 588) said: " This statute is limited to claims which existed against the intestate. A claim for funeral expenses is not of this character, inasmuch as it is not strictly regarded as a debt due from the intestate, but rather a charge against his estate."

" It is the duty of the administratrix in the first instance to bury the dead, and the expenses thereof are preferential claims." (Surrogate FOWLER in *Matter of Powers*, 75 Misc. 85.)

Claims for funeral expenses and burial are not debts of the decedent. Hence, not accounts against him or his estate. They can arise from no request or obligation of the decedent, expressed or implied, unless it might be in the provisions of a will. They are liabilities and charges against the estate, raised by and imposed by law as distinguished from obligations arising by some act or promise of the decedent. They stand in the same category as the expenses of administration. (*Snyder* v. *Thieme & Wagner Brew. Co.*, 173 Ind. 659, 664; *Sullivan* v. *Horner*, 41 N. J. Eq. 299.)

The right of priority of payments of *debts* due to the government is the prerogative of the Crown well known to the common law, and is placed into the statutes of the government so that now certain debts of the United States are founded upon actual provision of statute law. (*Davis* v. *Pullen*, 277 Fed. 650; *Marshall* v. *New York*, 254 U. S. 380; *U. S.* v. *Duncan*, 12 Ill. 523.)

In *Matter of Tierney* (88 Misc. 347) the surrogate of Oneida county held that reasonable funeral expenses must be paid in preference to a judgment recovered against the decedent.

In *Matter of Lawrence* (N. Y. L. J. Oct. 3, 1922) Surrogate FOLEY accorded a preference to a funeral bill as against the debt for taxes due the National government.

The common law discussed, described and recorded by Blackstone in his Commentaries as *lex non scripta*, consisted of general customs prevailing, growing out of the united wisdom and experience of mankind, being recognized as reasonable, consistent and established. The common law of England upon the subject under discussion was measured by the standard of reason and public policy. Consequently, common custom became common law. Our country accepted it and took it over and it obtains to-day unless changed by statute law. In many instances, it was written into

and has become the *lex scripta*, or statute law. The growth of modern civilization has not changed the adaptation of the principle of the priority of funeral charges; dead bodies of persons still have to be disposed of decently for the public good. "The principle stated herein is part of the common law, passed by no parliament, passed by no body of men, the growth of the decisions of a thousand judges of strong common sense."

It is interesting to note that in England to-day the law accords a preference to funeral charges. In *Edwards* v. *Edwards* (2 Cr. & M. 612 [1834]), PARKE, B., writing for the court, said "that only a reasonable sum ought to be allowed to an executor for funeral expenses, in the case of an insolvent estate." He thereafter pointed out that Lord HOLT in *Shelly's Case* (1 Salk. 296), in discussing allowances to executors for funeral expenses in the case of an insolvent estate, declared "that in strictness no funeral expenses are allowable against a creditor, except for the coffin, ringing the bell, parson, clerk and bearers, etc., but not for pall, or ornaments."

In *Stag* v. *Punter* (3 Atk. 119) Lord HARDWICKE allowed at first for funeral expenses only forty shillings, then five pounds, then ten pounds, and later sixty pounds. The law of preference still obtains in England. Stephen's Commentaries on the Laws of England (1925, Vol. 2, pp. 650, 653) states that there are now three classes of preferred debts — Crown debts, debts of record and debts due the personal representative himself. "And if the estate is insolvent, even these preferences are abolished * * *. As to expenses necessarily incurred in burying the deceased, the personal representative has a first claim upon the assets." (See, also, Administration of Estates Act, 1925 [15 Geo. 5, chap. 23], § 34, First Schedule, Part I.)

The rule of the common law existing at the time our Revised Statutes were enacted giving preference to the payment of funeral charges has been written into our law by Revised Statutes (Pt. 2, chap. 6, tit. 3 [2 R. S. 93], §§ 54, 55) to later become subdivision 3 of section 2729 of the Code of Civil Procedure (as added by Laws of 1901, chap. 293) and section 2686 of the Code of Civil Procedure (as amd. by Laws of 1914, chap. 443, and Laws of 1920, chap. 494) and the present section 216 of the Surrogate's Court Act.

The right to pay funeral charges which existed at common law and which was written into the Revised Statutes deals with the payment of a claim as distinguished from a debt. If it is urged that section 3466 of the United States Revised Statutes supersedes all State laws upon the subject of distribution, it can well be said

that the priority which the section seeks to establish is only in favor of " debts due to the United States." The statutes giving the government priority are presumed to have for their objects the public good and are, therefore, to be liberally construed. ( *U. S.* v. *Duncan*, 12 Ill. 523, 540.) Funeral charges as claims are not in the same category with debts owing by the decedent. The funeral charges in the instant case are reasonable, and have priority over the debts due the United States of America.

Decree of distribution to be submitted in accordance with this opinion.