In the Matter of the Estate of MARIAN DELORAH PAINE, Deceased.

Surrogate's Court, Monroe County, July 28, 1931.

*Homer E. A. Dick*, for the executor.

*William J. Baker*, for the claimant.

FEELEY, S. Upon judicial settlement of this estate it appears that after payment of the expenses of burying the testatrix and those of administering her estate, the sum of $1,300 is now in court for distribution among undisputed claims totalling $18,000,

one of which is for $430 for services to the testatrix in her last illness by a registered nurse. This claim is unsecured by lien or otherwise, and has never been reduced to judgment. The claimant urges it is entitled to preference under the statutes giving priority to " wages or salaries of employees." The counsel for the estate inclines to the opinion that a nurse is not an employee at wages or salary; but it seems to me these terms have been given a more liberal interpretation. There is more merit in his other point that the six or more provisions for such wage preference are manifold, and not uniform or consistent, and are apparently limited to the particular liquidation to which they respectively apply. It is only by analogy they can be applied to death liquidations, unless this undigested mass falls under the broad wording of section 212 of the Surrogate's Court Act, which grants priority to " Debts entitled to a preference under the laws of the United States and the State of New York." (Subd. 1.)

Literally, this subdivision supports the nurse's claim; but counsel for the executor argues the statute was not enacted for any such purpose; and has never been so construed in over a century of application, the only case on the subject being a decision apparently adverse to such claim as is made here, rendered by the surrogate of Bronx county in *Matter of Bawer* (137 Misc. 646). There one salary accrued after the decedent's death; and a number of other wage claims seem to have accrued before death of the employer, although the report is not explicit in this regard. The opinion takes the sound view that the argument should be directed to the Legislature rather than to the courts.

This subdivision 1 of section 212 of the Surrogate's Court Act appears to have originated in the Revised Statutes (R. S. pt. 2, chap. 6, Tit. 3, § 27). Whether any like statute was in force before 1830 I have been unable to ascertain in the limited time at my disposal herein, but I assume there was some such prior provision. The only changes since 1830 have been the omission in 1893 of the words " of classes " in the clause, " Shall pay the same according to the following order *of classes*; " and the addition in 1914 of the closing words " and the State of New York."

In 1830 no reference was made to the existing State statutes granting preference, but only to acts of the Congress. In 1830 the words " entitled to a preference under the laws of the United States " could not have referred to bankruptcy preferences, because the revisers could not have been ignorant of the historic fact that the first Bankruptcy Act had been repealed by the Congress in 1803, over twenty-five years before our revision of 1829–30. It was not

until 1841 that the second national bankruptcy act was enacted. The revisers used like terms elsewhere. In what is now section 188 of our Debtor and Creditor Law, the provisions are continued that were made or re-enacted by the Revised Statutes in their direction to trustees of insolvents, in regard to preferred debts, that " they shall pay all debts due by such debtor to the United States, and all debts due by him to persons who, by the laws of the United States, have a preference in consequence of having paid money as sureties of such debtor." This apparently subrogated such individuals to the paramount rights of the United States as the main creditor. (See Jessup Surr. Pr. [3d ed.] § 802.) Here the distinction is clear between individuals and government. Whatever other like Federal provisions there may have been at that time I have not been able to ascertain.

Had the revisers intended to grant preferences to individuals in other cases of death liquidation, they presumably would have said so; for at, and before, that time many State statutes had dealt with the subject of insolvency. Our original " Two Thirds Act " was passed in 1788; but it was not until 1914 that there was added to this subdivision the reference to the State of New York. In 1893 this subdivision was amended in a transfer of it from the Revised Statutes to the Code of Civil Procedure.

It appears probable, therefore, that the debts intended to be preferred by subdivision 1 of section 212 of the Surrogate's Court Act were and are debts due to one or other of the governments mentioned — the former before the latter for constitutional reasons — and, by subrogation to such sovereign rights, the debts of individuals in the cases specified above. No other individual claim has been so preferred — at least in so far as I am now informed; nor has this claimant brought herself under any such statute. While in the case of neither government was any such declaration of preference necessary in order to prefer the claim of the sovereign power (*Matter of Niederstein*, 154 App. Div. 238), the object of such express provisions on the subject seems to have been to put the specific obligation to government ahead of the general duty to discharge the " social debt " in the form of paying one's taxes. The individual creditor is preferred only in so far as he is subrogated to a governmental claim, or otherwise specifically preferred by the government or statutes. This claimant has not brought herself within the scope of any such legislation. She is not entitled to anything more than her *pro rata* in the final distribution.

Let the decree of judicial settlement be framed accordingly and entered.