In the Matter of the Estate of SAMUEL EPSTEIN, Deceased.

Surrogate's Court, Kings County, March 14, 1935.

*Epstein & Goodman* [*Louis G. Langer* of counsel], for Harry Epstein, petitioner.

*Frederick W. McGowan,* for the National Surety Company.

*Frost & Howell,* for Burns Brothers.

*Julius S. Smith,* for the Royal Indemnity Company.

*Vincent Tese,* for the Thomas Wright Co., Inc.

WINGATE, S. This application involves a question of the interpretation of section 130 of the Workmen's Compensation Law, added by chapter 508 of the Laws of 1931, which appears never to have been passed upon in any reported decision.

The facts are not in dispute. The decedent was an employer of labor who took out a policy of employers' liability insurance with Royal Indemnity Company for the year terminating on October 15, 1931. The basis of the premium payable by him was the amount of his annual payroll, and was computed at the rate

of $5.43 for each $100 of such annual expenditure. This premium was payable in two parts, the first, due at the beginning of the fiscal year, was based on his advance estimate of what his total payroll during the coming year would be. The second portion was payable at the end of the year and was based on the difference, if any, between his estimate and the fact as it actually eventuated.

In the present instance the insured estimated that his total payroll for the year would amount to $5,000, and accordingly made an initial payment to the insurance carrier of $278.50. As events proved, his figure was a material underestimate, since during the year his aggregate expenditure for wages amounted to $13,553.25. In consequence the remaining portion of the premium for the insurance which became payable by him amounted to $457.44.

He has died and his estate is quite hopelessly insolvent, having apparent assets, subject to administration charges, of about $3,000, and liabilities of over $49,000.

It is the contention of the insurance carrier that its claim for the unpaid portion of its premium is entitled to preference in payment. This position is contested only by the administrator.

The basis for the claimant's position is the wording of section 130 of the Workmen's Compensation Law, which reads as follows:

" § 130. Workmen's compensation premiums shall be deemed preferred claims. All premiums and interest charges on account of policies insuring employers against liability under this chapter which may be due to the state insurance fund, or any stock corporation or mutual association authorized to transact the business of insurance in this state, and all judgments recovered by the state insurance fund or any such insurance corporation or association against any employer on actions brought under any such policy, shall be deemed preferred claims in all insolvency or bankruptcy proceedings, trustee proceedings for administration of estates and receiverships involving the employer liable therefor or the property of such employer, provided however that claims for wages shall receive prior preference in all such proceedings."

The attorneys for the administrator have presented, by way of memorandum, an interesting dissertation on the primary canons of statutory interpretation. They have, however, admittedly found no precedent which in any wise impinges on the question here at issue.

To the court, the section title is so illuminative of the purpose which the Legislature intended that it could scarcely be made clearer; it is that " Workmen's compensation premiums shall be deemed preferred claims." The reason for this desire is not a matter of any great mystery, and is part and parcel of the vast volume

of enlightened legislation which in the past generation has transformed the manual laborer from the semi-chattel status which he had occupied for centuries, to the dignity of a person worthy of protection in his rights and person.

In our complex civilization accidents are unavoidable, but it is no longer the policy of the State to impose their burdens solely upon the unfortunate victim. He is to be relieved of a part, at least, of the misfortune in so far as a payment of expenses and indemnity for his impaired or lost earning power can do so. The attainment of this object is possible only by the establishment and maintenance of a fund from which such disbursements can be made, wherefore the preservation of the integrity of such fund by the enactment of a statute that the required contributions thereto shall be paid in preference to ordinary obligations where all are incapable of full solution, is an essential to the operation of the entire plan and is involved in a very real public interest.

With this vital public benefit in mind, the Legislature enacted the section in question and, in view of the public interest involved in the furtherance of the object, it should be construed as effecting the purpose indicated in its title unless the language employed in the main body of the section is incapable of sustaining such meaning.

In the broad use of the term, the marshaling and distribution of an insolvent decedent's estate is obviously an " insolvency " proceeding in just as true a sense as a similar proceeding *inter vivos* which has the same object and is attended by like results; but further than this, the administration of such a decedent's estate is clearly within the description of " trustee proceedings for administration of estates." Every fiduciary in the Surrogate's Court, by whatever particular designation he may be called, is a trustee, since he is a person to whom the management of the property of others is intrusted.

It follows that under the provisions of section 130 of the Workmen's Compensation Law the Royal Indemnity Company is entitled to a preference in payment of its claim over other creditors of this estate under the facts here disclosed.

Enter decree on notice.