In the Matter of the Estate of HENRY PHILLIPS, Deceased.

Surrogate's Court, New York County, July 21, 1938.

*Herbert O. Burden*, for the executor.

*Irving Mariash* [*Seth V. Elting* of counsel], for two wage creditors asserting preference.

*Patrick S. Mason*, for the State Insurance Fund, asserting preference.

*Eloise Phillips*, widow, objectant, in person.

*Irving Gordon*, for Alexander S. Gordon, creditor.

*Solomon Agar*, for distributees.

*Harold H. Malkan*, for the Peerless Coal Company, Inc., creditor.

*Benjamin Rosen*, for the R. M. Hollingshead Corporation, creditor.

*John A. Dutton*, for the Trustees of the Masonic Hall and Asylum Fund.

DELEHANTY, S. The State Insurance Fund seeks preferred treatment of its claim pursuant to section 130 of the Workmen's Compensation Law. That section says: " Workmen's compensation premiums shall be deemed preferred claims. All premiums and interest charges on account of policies insuring employers against liability under this chapter which may be due to the State Insurance Fund, or any stock corporation or mutual association authorized to transact the business of insurance in this State, and all judgments recovered by the State Insurance Fund or any such insurance corporation or association against any employer on actions brought under any such policy, shall be deemed preferred claims in all insolvency or bankruptcy proceedings, trustee proceedings for administration of estates and receiverships involving the employer liable therefor or the property of such employer, provided however that claims for wages shall receive prior preference in all such proceedings."

The stipulated facts show that the liability for the premiums claimed by the State Insurance Fund arose during the administration of the estate. The business formerly owned by deceased was continued in operation by a temporary administrator and payments of workmen's compensation premiums made. A reaudit of the payroll during such continuance shows that the further sums now claimed are due. The expense constitutes an adminis-

tration expense and so is entitled in this estate to payment prior to *any* claim based upon a debt of deceased. The account so describes the item but refers to it as having been incurred by a predecessor fiduciary. The cataloging of the claim as an administration expense grants the preferred treatment which the State Insurance Fund seeks and satisfies its objection.

Two wage claimants who have procured against the executor judgments establishing their claims as valid seek a true *debt* preference under section 212, subdivision 1, of the Surrogate's Court Act. They base their claims upon the last clause of the above quoted section of the Workmen's Compensation Law. That clause says: "provided however that claims for wages shall receive prior preference in all such proceedings." The argument of these wage claimants is this: They say that the final clause just quoted makes wages superior in right to compensation premiums. They say that workmen's compensation premiums constitute "debts entitled to a preference under the laws of the * * * State of New York." They assert that authority for the claimed preference is found in *Matter of Goodwin* (163 Misc. 273). A contrary view on this subject is to be found in *Matter of Bawer* (137 id. 646) and in *Matter of Paine* (140 id. 928).

It is useful to consider the history of subdivision 1 of section 212 of the Surrogate's Court Act. So far as pertinent the section says: "Payment of debts. Every executor and administrator must proceed with diligence to pay the debts of the deceased according to the following order:

"1. Debts entitled to a preference under the laws of the United States and the State of New York."

This statutory provision has its roots in the revision of the statutes of this State made to become effective January 1, 1830. The Revised Statutes (Rev. Stat. part 2, chap. 6, tit. 3, art. 2, § 27) first phrased the provision thus:

"Every executor and administrator shall proceed with diligence, to pay the debts of the deceased, and shall pay the same according to the following order of classes:

"1. Debts entitled to a preference under the laws of the United States."

Section 212 of the Surrogate's Court Act as we know it differs in two respects from this first formulation of the rule. The words "of classes" in the introductory portion of the text were dropped out by chapter 686, Laws of 1893. The words "and the State of New York" were added to subdivision 1 of the section by chapter 443 of the Laws of 1914 which generally revised the surrogates' practice.

Prior to the amendment of 1914 the statute seems to have been understood generally to have granted a preference only to debts due *to* the United States. Referring to a predecessor section of the Code of Civil Procedure, the Court of Appeals in *Matter of Gill* (199 N. Y. 155, 158) said in 1910: " Section 2719 of the Code of Civil Procedure which is a reproduction of the Revised Statutes, enacts that taxes assessed upon the property of a deceased previous to his death shall be paid next in order to *debts due the United States* and before all other debts." (Italics supplied.)

The text writers spoke in the same vein. Thus in Dayton's Surrogates' Courts ([3d ed.], p. 314), published in 1861, the author, in discussing that provision of the Revised Statutes which, as amended in 1914, became section 212 of the Surrogate's Court Act, subdivision ·1, said in part: " where the estate of any deceased debtor, in the hands of executors or administrators, shall be insufficient to pay all the debts due from the deceased, the debt *due to* the United States shall be first satisfied." (Italics supplied.)

While the law of New York antecedent 1914 thus declared that the national government had priority in right to payment of its claims that priority was not due at all to the State statute but to an act of Congress (1 U. S. Stat. at Large, 515, March, 1797). Our State statute functioned merely as a convenient reminder to fiduciaries of the obligation of estates to the United States by reason of the act of Congress on the subject. Any doubt on this point is removed by the original notes of the revisers of 1829. The revisers said (3 R. S. [2d ed.] 641):

" It seemed useful to declare the order of payment of debts, for the information of executors, and to settle disputes.

" (1) Debts due to the United States, of all descriptions, must be first paid, 2d Cranch's Rep. 258 (*sic*). The 5th section of an Act of Congress, in the 2d vol. of last edition of laws of U. S., p. 595, declares that when the estate of a debtor, in the hands of his administrator, shall be insufficient to pay all his debts, those to the United States shall be first satisfied."

This point is also clearly formulated in 2 Woerner on the American Law of Administration ([2d ed.] § 366), where it is said: " Of the debts created by the decedent in his lifetime those which are due to the government of the United States are payable before all others. This is recognized by the statutes of some of the States which place debts having preference under the laws of the United States in a class preceding all other debts  *  *  *. But the preference in favor of the United States exists under the law of Congress and is valid for all States, whether their statutes are silent on the subject, as in the case of most of them, or contain inconsistent provisions."

The grant of absolute priority to the United States in the recovery of debts due to it from a deceased person's estate was formulated early in our history and its effect was to give to the United States greater rights than had been enjoyed by the English Crown. The latter enjoyed priority only *within a class* of creditors. The Crown had no absolute priority. (Godolphin on Orphan Legacy, [1701] p. 216; *Matter of Niederstein*, 154 App. Div. 238, 242.) This distinctive treatment of the United States by the act of Congress was recognized and stated by Chief Justice MARSHALL in *United States* v. *Fisher* (6 U. S. [2 Cranch] 358, 395, decided in 1805), where he said: " It is contended that this priority of the United States cannot take effect in any case where suit has not been instituted; and in support of this opinion several decisions of the English judges with respect to the prerogative of the Crown have been quoted. To this argument, the express words of the Act of Congress seem to be opposed." The opinion at page 385 quotes the statute: " where the estate of any deceased debtor, in the hands of executors or administrators, shall be insufficient to pay all the debts due from the deceased, the debt due to the United States shall be first satisfied." No distinction between classes of debts is made and none has ever been admitted so far as the national sovereignty is concerned.

This history of the priority enjoyed by the United States makes pertinent further consideration of *Matter of Niederstein (supra)*. In that case deceased had been the clerk of Queens county. His estate was insolvent. Apparently he had embezzled both State funds received as mortgage taxes and the funds of an infant for whom he acted as guardian. Besides these two creditors there was one *judgment* creditor. " The surrogate made an order directing the executors to pay *first*, and in full, the claim of the judgment creditor; and, *second*, to the extent of remaining assets, the claim of the State of New York; and, *third*, * * * the claim of the infant " (p. 239). This order was affirmed on appeal. The case discusses the history of the preferences granted to the Crown and to this State by the common law. The court reached the conclusion that the judgment creditor under then existing law was preferred over the State. The report shows that the State apparently claimed only a preference among debts of the same class as its own and did not even assert a right in priority to the judgment creditor. The revisers of 1914 said: " A recent decision gives the State preference in certain cases." The report of the revisers was transmitted to the Legislature February 9, 1914. While *Matter of Niederstein* is not mentioned by name it was decided December 13, 1912, and seems to be the case referred to by the commission

which had been operating under authority of chapter 547 of the Laws of 1912 and chapter 37 of the Laws of 1913. (There is some uncertainty on this score because in November, 1912, the Court of Appeals in *Matter of Carnegie Trust Co.* [206 N. Y. 390] dealt with the question of the preference under the common law enjoyed by the State in respect of the assets of an *insolvent but not deceased debtor.*)

The revisers added to the first subdivision of the section the phrase which purported to put the State of New York on a parity with the United States. They used the words " and the State of New York," leaving undisturbed the phrase " entitled to a preference under the laws of." (Report of Surr. Rev. Comm. p. 216.) The antecedent interpretation of that last quoted phrase (to wit, that it meant debts *due to* the United States) must be assumed to have been in the minds of the revisers and that they meant to include in the first category of preferences debts *due to* the State of New York. Their note, already quoted, confirms that this was their purpose. What the revisers did thereby was to elevate in decedent estate administrations the right of the State of New York from its common-law right of preference within a given class to a right of preference over all creditors except the United States. The revisers did not change that sentence in the section which said that preference should not be given within classes. Seemingly the revisers attempted to put the State of New York on a parity with the United States. That could not be done of course since the national sovereignty had its priority over the State because of the act of Congress already referred to. The review thus made of the history of the section requires the conclusion that debts to *private* persons can in no case claim preference under subdivision 1 of section 212 of the Surrogate's Court Act.

Separate comment should be made on section 130 of the Workmen's Compensation Law which is quoted at the beginning of this decision. The phrase therein used —" trustee proceedings for administration of estates "— has no application to the administration of the estate of a deceased person. The phrase no doubt has application to and perhaps derives its very text from article 7 of the Debtor and Creditor Law where elaborate provision is made for " trustee proceedings for administration of estates." In that article provision is made for preferred debts (§§ 188, 189, 190). The context of section 130 of the Workmen's Compensation Law in which the phrase relating to " trustee proceedings " is found deals with insolvencies, bankruptcies and receiverships. Applying the ordinary standards of construction it is held that the statute relates to trustee proceedings in connection with such insolvencies,

bankruptcies and receiverships and not at all to the administration of estates of deceased persons. In such insolvent administrations the sort of preference granted by section 130 of the statute is not uncommon.

The Legislature should not be presumed to have created a new preference in decedent estate administrations while leaving undisturbed the text of section 212 of the Surrogate's Court Act. The claim of preference of the wage claimants is in all respects denied.

The widow is entitled to a cash setoff of $300 under section 200 of the Surrogate's Court Act. She is likewise entitled to a refund of fifty dollars for the value of the gas stove and other kitchen equipment sold by the executor out of property which she had the right to have set off to her. She is not chargeable with the proceeds of the Pontiac car since she would be entitled to the car itself under subdivision 3 of section 200 of the Surrogate's Court Act.

In view of the limited actual assets of the estate the court fixes and allows as the compensation of the attorney for the executor the sum of $750, against which is to be credited the sum of $385 already paid. No costs are to be taxed though out-of-pocket disbursements in the accounting may be taxed.

Submit, on notice, decree settling the account accordingly.