In the Matter of the Estate of JACOB NIFENEGER, Deceased.

Surrogate's Court, Monroe County, September 19, 1941.

*E. C. Edelman*, for the petitioner.

*R. E. Westbury*, for a creditor.

*W. H. Emerson, Corporation Counsel [C. H. Hardell* of counsel], for the City of Rochester, a creditor.

FEELY, S. The assets now brought into this court for distribution, subject to payment of administration expenses, are insufficient to pay in full two undisputed claims, one for a balance of account due a funeral director whom deceased engaged to bury his wife, in the sum of $265, and the other is a claim by the city in the sum of $1,500 for hospitalization furnished to decedent and his wife.

Concededly, the funeral director must be rated here as a general creditor. The question is whether the city's claim is to be preferred to that of the funeral director as a " debt entitled to preference under the laws of the United States and the State of New York," as provided in subdivision 1 of section 212 of the Surrogate's Court Act.

The only mention of preference or priority is in the Public Welfare Law, and there only in reference to life insurance payable to the estate of the insured who was liable for relief furnished. (Pub. Welfare Law, § 129, now Social Welfare Law, § 105, effective March 1, 1941.) The Charter of the city also is silent on this subject of welfare priority. The present case law is well summarized in *Matter of Rowland* (169 Misc. 303), where the surrogate of Onondaga county said: " The appellate courts have not ruled directly upon the question, and the decisions of the lower courts are conflicting. * * * ' The Legislature should not be presumed to have created a new preference in decedent estate administrations while leaving undisturbed the text of section 212 of the Surrogate's Court Act.' "

The last sentence is quoted from, and represents the attitude of the Surrogate's Court of New York County (*Matter of Phillips*, 169 Misc. 86); and also the position taken by most of the courts that have considered the question. The dissenting cases appear to rest upon a literal reading of the words " debts entitled to a preference " under Federal or State statutes. This wording is thus extended to include a variety of matters, some inconsistent with other provisions of section 212, and also other items not expressly mentioned therein, nor in any other statute. The greater number of cases in opposition thereto seem to rest on the view that priority in payment is peculiar to each type of liquidation in which it is claimed; and is governed by the law of the forum where the liquidation is in hand; and that priority, being an unusual privilege, depends upon having clear and specific warrant in the law of that forum.

In modern law priorities are recognized, in almost every case, only by virtue of some regulatory statute dealing with some particular matter exclusively. The existence of such statutes deprives the courts *pro tanto* of the power to extend priority to another class either by inference from " inherent power," or by reliance on any of the equitable grounds that, *e. g.*, are urged in equity receiverships (*Massey* v. *Camden & Trenton R. Co.*, 78 N. J. Eq. 539; 80 A. 557; Ann. Cas. 1912B, 1246), in the absence of clear statutory provisions.

A priority is generally a special variation of the rule that equality is equity in any liquidation; and for this reason is strictly construed; and the burden is placed on the claimant to show correspondingly clear authority for the exception.

It should also be borne in mind that in all of the commercial liquidations the statutes creating preferential priority expressly limit the privilege to the pending proceeding; *e. g.*, in assignments for creditors, to " all distribution of assets * * * made in pursuance of this article " (Debtor and Creditor Law, § 22); and under the Bankruptcy Act (§ 64, subd. b; now U. S. Code, tit. 11, § 104, subd. a), " the debts to have priority " are those " to be paid in full out of bankrupt estates." Neither enactment was intended to make its priorities of universal application, in any other proceeding whatsoever.

Further support for the majority opinion was indicated in *Matter of Paine* (140 Misc. 928), and more adequately discussed in *Matter of Phillips* (*supra*), in the history of the development of section 212 (see *Matter of Niederstein*, 154 App. Div. 238), as indicating that what was really intended by the Revised Statutes of 1829–30 in the first subdivision was to prefer debts due to the United States only, where common law had preferred the Crown or Sovereign. On this basis the court concluded in the *Phillips* case that " debts to *private* persons can in no case claim preference under subdivision 1 of section 212 of the Surrogate's Court Act." It was not until 1914 that " State of New York " was added to this first subdivision. Thereafter the amended subdivision may have referred also to funeral expenses, which are payable out of the first moneys received, by virtue of another section (216) of the Surrogate's Court Act. Incidentally, there does not appear to be any statutory authority for " administration expenses " having the top priority commonly conceded them.

A brief reference to the cases will show the extent of the conflict of opinion. In the *Rowland* case (*supra*), and in the *Phillips* case (*supra*), and in the *Paine* case (*supra*), and in *Matter of Bawer* (137 Misc. 646), the priority given wages by other statutes was

held to be inapplicable in a surrogate's liquidation; whereas the contrary result was reached in Kings county in *Matter of Goodwin* (163 Misc. 273).

In Bronx county the decree of a French court awarding alimony was held not such a judgment as is given priority in section 212 of the Surrogate's Court Act; and there it was stated *arguendo* that "Federal or domestic laws prescribing preferences in payment of the debts of a bankrupt or of an assignor for the benefit of creditors are inapplicable to the payment of this decedent's debts." (*Matter of McCoy*, 157 Misc. 280.)

As regards the claim of a public body for welfare furnished to the decedent, the priority as to proceeds of insurance above mentioned was inferentially extended in May, 1941, by the surrogate of Orange county (*Matter of Clonan*, 176 Misc. 557) to a claim for welfare in a judicial settlement before the surrogate, on the theory that the priority as to insurance is *in pari materia;* and also that "No reason for preferring the commissioner's claim as against life insurance proceeds and requiring that he be a general creditor as against general estate funds has been advanced." However, it can be said that here in one and the same statute the Legislature in one section grants to a claimant for welfare furnished a preference as to insurance moneys, while in a nearby section in creating a new cause of action for welfare furnished, the lawmakers omit to confer on it any priority. The expression of preference in one section and the omission of priority in another section of the same statute show that the Legislature had this matter of priority in mind. If that omission was unintentional, the well-meant efforts of courts to supply this omission by implication and inference or analogy, may be regarded as an attempt to do what only the Legislature can do.

The courts have often pointed out the differences between commercial liquidations of a living person's assets, and the liquidation of a decedent's estate. These distinguishing factors make it hard either to approximate uniformity in priority of payment in all liquidations whatsoever, or in any given stage of priority to grant or withhold parity uniformly.

In this respect the literal reading given this subdivision is indefinite, and the omnibus application of it leads to inconsistent and confusing results. The confusion that existed before the Revised Statutes (*Matter of Stiles*, 126 Misc. 715) in this matter of decedent estate priorities has not yet been fully removed.

Wages, and especially those for preserving a bankrupt's estate, are preferred in payment by the Federal act. Suppose, however, after a person had been adjudicated bankrupt, he inherited property and died, and his estate is in liquidation before the surrogate,

most persons would doubt that any trustee in bankruptcy would file a claim with the administrator of the sometime bankrupt for the deficiency of the bankrupt assets to pay in full the wages preferred by the Federal act — not to mention other like preferences of filing fees, costs of administration, and legal services — on the ground that the State law literally prefers " debts entitled to a preference under the laws of the United States." So, a claim for funeral expenses, not mentioned in section 212, was preferred by Surrogate SLATER to Federal income taxes, notwithstanding the Federal statutes require " debts due to the United States shall first be satisfied." (*Matter of Stiles, supra.*)

From the viewpoint of bankruptcy, while the Federal act specifically recognizes in general terms the preferences given by State laws, it avoids some confusion by placing this group expressly at the bottom of its lists. When such local priorities are claimed in bankruptcy, they lose their local priority to the extent that they then have only such preference as the Federal courts or agencies accord them. (*Matter of Inland Dredging Co.*, 88 A. L. R. 254.) A judgment of a State court against a decedent, docketed in his lifetime and within four months before his petition in bankruptcy, is preferred without qualification in surrogate liquidations; but when set up in bankruptcy such judgment is shorn of considerable, if not all, of its local attributes; even if the bankrupt were to die *pendente*. The Federal courts have held such local priorities do not control their action (*Spratt v. Crowell*, 4 F. Supp. 368); nor does section 212 of the Surrogate's Court Act extend the application of Federal statutes giving priority to debts due the United States. (*United States v. Sullivan*, 19 F. Supp. 695.)

So, in respect of premiums for workmen's compensation insurance and judgments in favor of the insurance carriers, even where due the State Fund, an obvious overstatement has been made by the Legislature in section 130 of the Workmen's Compensation Law where it literally purports to interpolate into the Federal Bankruptcy Act a priority for such premiums and judgments. Our statute literally purports to grant such priority " in all insolvency or bankruptcy proceedings, trustee proceedings for administration of estates and receiverships involving the employer liable therefor or the property of such employer, provided however that claims for wages shall receive prior preference in all such proceedings." The " administrations " above mentioned are not defined as those of a decedent's assets; and it has been pointed out that trustee administrations take place in courts other than the surrogates'. It will be observed also that there is no specification of just what place in the existing scale of priorities these interpolations are to be made; nor of parity or preference in any one stage thereof.

Under this section 130, it was held in Kings county in *Matter of Epstein* (154 Misc. 776) that the judicial settlement of an intestate's estate before the surrogate, where there is an insufficiency of assets, is an " insolvency " proceeding; and is also within the description of " trustee proceedings for the administration of estates," inasmuch as the administrator of the intestate is a fiduciary; and that in such case insurance premiums — not payable to the State Fund — are held to be preferred by the surrogate over the claims of " other creditors." The report does not more specifically describe the rank of these " other creditors."

There seems to be some authority for inferring that these individual insurance judgments would come ahead of other judgments, and regardless of the date of docketing, notwithstanding section 212 gives judgments a specific rank, below all other priorities and just ahead of general creditors. Thus, in *Mutual Life Ins. Co. of New York v. Smyth* (247 App. Div. 27), where the city's welfare claim on insurance was held payable to the administrator, rather than to a relative, the higher court, reversing the surrogate, also held that the claim on the insurance was not to be preferred under section 129 of the Public Welfare Law, over all other claims; but the court in remitting the matter to the surrogate for final disposition omitted to advise him in just which bracket or stage this preference should be ranked. Later, in reliance on that *Smyth* ruling, the Surrogate's Court of New York County, in *Matter of Ciappei* (159 Misc. 438), held that a city's welfare claim on insurance should be paid ahead of judgments, holding such claim ranked under subdivision 1 of section 212 as a debt due the State of New York, apparently on the assumption that the city was a subdivision of the State. The report of that case does not show whether or not the court was asked to rank this claim just after judgments and ahead of general creditors. To obviate similar doubt the amended Lien Law changed the common law by its declaration (§ 10) that the death of the owner of improved realty before the filing of a mechanic's lien should no longer be deemed to reduce the claim of the contractor to the rank of a general debt under this section 212 of the Surrogate's Court Act.

The literal interpretation of the first subdivision of section 212 not only reduces debts due to the United States and those due to the State of New York to the level of those due to merely general creditors, but such interpretation also prefers over taxes and judgments, which have an expressly specified rank in this section 212, a miscellaneous lot of individual claims that may have priority in other liquidations elsewhere under extraneous statutes, together with welfare claims that have no express preference except as to

insurance; and thus this matter of special privilege in respect of prior payment is left to rest to a confusing extent merely on inference and analogy, and not on express and definite statutory provision. In this state of the law, and notwithstanding the rights of a public body are involved, my conclusion is that the majority ruling should be followed until the Legislature sees fit to clarify the statutes in respect of priority payment in decedent estate liquidation in Surrogate's Court; and that the city in this case should be regarded only as a general creditor for the amount of welfare furnished this decedent.

On notice, submit for signature, and enter, a decree in accord with this decision.