S. Samuel Di Falco, S.
Upon the accounting proceeding in this insolvent estate, questions are presented with respect to the order in which the judgment creditors are entitled to payment. The claim of objeetant Meade and Taft Company, in the sum of $28,700.71, is based upon judgments docketed in the Supreme Court, Orange County, on May 29, 1952. The claim of objeetant Bitter Bros. Inc., in the sum of $10,624.61, arises out of a judgment docketed in Supreme Court, New York County, on December 11,1957. Meade and Taft Company claims the balance of the estate under section 212 (subd. 3) of the Surrogate’s Court Act which states that judgments will be paid “ according to the priority thereof respectively ”. Bitter Bros., Inc., asserts a lien on the available funds by virtue of a levy made by the Sheriff of New York County on the goods and chattels of the intestate during her lifetime.
It has been established that on January 14, 1958 an execution was issued against the property of the judgment debtor who then resided in an apartment at 4 Sutton Place, New York City. The execution was delivered to the Sheriff on January 20, 1958. On January 21, 1958 the Sheriff made a levy on all of the property of the judgment debtor in her apartment, an inventory was taken, and a notice was duly posted for the sale of the property on April 24, 1958 at the intestate’s apartment. The property set forth in the notice of sale includes: “ Contents of large lavish duplex apartment including furniture, rugs, chandelier, wall lights, books, pictures, grand piano, tables, figurines, bric-a-brac, and occasional pieces, fireplace sets, clocks, silver ”. At this point the judgment debtor through her attorney offered to make payments on account of the judgment and the Sheriff’s sale was adjourned without date. Payments were made on May 5, 1958 in the sum of $1,064.23 and on June 5,1958 in the sum of $519.28 so that the $12,208.12 judgment was reduced to $10,624.61, the amount claimed by Bitter Bros. Inc. here, together with interest and Sheriff’s poundage fees and disbursements. The judgment debtor died on August 13, 1958. Letters of administration were *73 issued herein on September 30,1958. Thereafter, the judgment creditor insisted that the adjourned sale be held. The administrator and Bitter Bros. Inc. agreed that the contents of the apartment and other property removed to a warehouse from the apartment after death would be sold by the administrator and that the net proceeds would be deposited by him in a special account to abide the decision of this court. The proceeds of the sale amounted to $18,382.69. There now remains in the hands of the administrator the sum of $16,086.76 subject to administrator’s commissions and the fee of the attorneys for the estate as fixed by the court.
The efforts of the earlier judgment creditor Meade and Taft Company did not include any execution on the property of the intestate. This creditor confined itself to supplementary proceedings and obtained an order in the Supreme Court, Orange County, on June 12, 1952 entered on stipulation directing the judgment debtor to make monthly payments. This order was introduced in evidence. Meade and Taft Company alleges that in 1957 proceedings were commenced to punish the debtor for contempt for failure to comply with the Supreme Court, Orange County, order. Decedent had paid $4,495 on account of this judgment. The decedent was to appear in said contempt proceedings before the Supreme Court in the City of Newburgh on January 10, 1958, and defaulted. Thereafter, no action was taken. The respondent Meade and Taft Company claims that by instituting supplementary proceedings it obtained a lien upon all of the property of the judgment debtor. The restraining provision of a subpoena served in supplementary proceedings is only effective for two years from the date of service ‘ ‘ at which time it shall be deemed vacated for all purposes unless extended by order of the court for good cause shown ”. (Civ. Prac. Act, § 781.) The June 12, 1952 Supreme Court order did not extend the restraining provisions of the subpoena to and including January 20, 1958, the date when the execution on the Bitter Bros. Inc. judgment was delivered to the Sheriff. Any lien that Meade and Taft Company claims was only an inchoate one, however, remained ineffectual, until either a turnover order was obtained or until the Supreme Court appointed a receiver. (Edmonston v. McLoud, 16 N. Y. 543; Lynch v. Johnson, 48 N. Y. 27; Matter of City of New York [Neptune & Emmons Aves.], 165 Misc. 309.) Neither was done here, the last act in the supplementary proceedings was to note the debtor’s default in the contempt proceedings. By reason of the failure to proceed further, the lien, if any, on the judgment debtor’s property was lost. In *74 Matter of City of New York (Neptune & Emmons Aves.) the court said (p. 313): “From a careful examination of the authorities above mentioned and the circumstances out of which arose the expression that ‘ a judgment creditor acquires, by the service of an order for examination in supplementary proceedings, an equitable lien on the judgment debtor’s assets,’ it is apparent that such so-called lien is inchoate merely, and is not perfected until an order to deliver or pay over property is made or a receiver appointed.”
Section 679 of the Civil Practice Act states: “ the goods and chattels of a judgment debtor, not exempt, by express provision of law, from levy and sale by virtue of an execution, * * * are bound by the execution, when situated within the jurisdiction of the officer to whom an execution against property is delivered ’ ’. Thus from the time the execution is delivered to the Sheriff the execution creditor has a lien thereon. Here there was more than mere issuance of an execution. An actual levy was effected, inventory made and notice of sale posted. The Sheriff had the property in his view and within his power and in every respect made a valid levy. Actual possession by the Sheriff or removal from the premises of the debtor is in no way required. Once levied upon the property is deemed to be in custodia legis. (Dean v. Campbell, 19 Hun 534, 536; Bond v. Willett, 31 N. Y. 102; Barker v. Binninger, 14 N. Y. 270, 277; Roth v. Wells, 29 N. Y. 471; Matter of Heights Promenade [Volper], 198 Misc. 788.) Accordingly, the execution issued herein by Bitter Bros. Inc. was a lien as of the time of delivery to the Sheriff on January 20, 1958.
The court, being satisfied that a lien attached to the goods and chattels of the judgment debtor, must now consider whether or not the levy made under the Bitter Bros. Inc. execution was extinguished by the death of the debtor or whether said levy became dormant.
Wood v. Morehouse (45 N. Y. 368) holds that if execution has already been issued at the time of death of the judgment debtor, the right of the judgment creditor to complete the proceedings is not affected. It is clear that the lien of the execution creditor survived the death of the judgment debtor (7 Carmody-Wait, New York Practice, ch. 64, § 18.)
The circumstances of the case do not warrant a finding by this court that the lien of the execution creditor was lost by failure to enforce it within a reasonable time. The court has examined the cases cited by the respondent Meade and Taft Company where other courts have deemed a levy to have been abandoned, *75 and it finds that in those cases either no action was taken to enforce the levy or that such action was delayed by the execution creditor beyond a reasonable time. Here we find that Ritter Bros. Inc. was as diligent as it could be in the circumstances and acted within a reasonable time. The record reveals that the Sheriff was advised that the decedent had died as early as August 25, 1958 some 12 days after death, and thereupon was told by the execution creditor to proceed with the sale; that there was some delay occasioned by reason of the fact that an administrator was not appointed until September 30, 1958; and there was some correspondence between the Sheriff’s office and the warehouse to which the property was removed advising them of the lien. It cannot be said that the execution creditor was in any way remiss or that it permitted the lien to become dormant. The levy of the execution creditor was not in derogation of the rights of any other creditors. They were content to resort to supplementary proceedings which did not give them the lien afforded the execution creditor which survives the death of the debtor. What would their position be at this time were the sale actually held? The fact that the sale was conducted by the administrator and not the Sheriff places another judgment creditor in no better position. The Sheriff at all times had the right to conduct his sale and apply the proceeds to the judgment and expenses of the sale and turn over to the administrator only the excess. The judgment of this court is that the lien of Ritter Bros. Inc. was neither extinguished, nor did it become so dormant as to warrant this court’s' deeming the levy to have been abandoned.
Certain property, however, levied upon by the Sheriff was exempt from levy pursuant to the provisions of sections 665 and 665-a of the Civil Practice Act, namely: ‘ ‘ All wearing apparel, household furniture, one mechanical gas or electric refrigerator, one radio receiver, crockery, tableware, and cooking utensils necessary for the judgment debtor and the family.” (Civ. Prac. Act, § 665, subd. 5; emphasis supplied.)
The general rule is that those articles which the levying officer can easily identify by inspection as falling within the classes of exempt property under the first six subdivisions of section 665 of the Civil Practice Act, are not subject to levy even though the debtor does not specifically claim the exemption (7 Carmody-Wait, New York Practice, p. 614). The word “necessary ” as found in the statute qualifies the extent of the exemption and certainly not all of the furniture etc. in this “large lavish duplex apartment” is exempt. (McCarthy v. McCabe, 131 App. Div. 396.) No proof was offered at the hearing *76 with respect to which of the chattels levied upon were necessary and the valuation of said necessary articles.
These remaining issues as to which chattels were necessary and their valuation may be proved at a further hearing to be held herein. At this time the court will consider the claim of K. Denise Livingston to a diamond ring allegedly wrongfully or erroneously placed among the decedent’s effects, the hearing as to this claim having been previously adjourned Avithout objection.
Ida Michel, an employee of decedent, claims priority under subdivision 1 of section 212 for wages in the sum of $112.50. She asserts that authority for the claimed preference exists by Adrtue of section 130 of the Workmen’s Compensation Law and Matter of Goodwin (163 Misc. 273). A view contrary to that of the cited case was expressed in Matter of Bawer (137 Misc. 646) and in Matter of Paine (140 Misc. 928). Later decisions explicitly rejected the authority of Matter of Goodwin. In Matter of Phillips (169 Misc. 86, 91-92) Surrogate Delehaitty Avrote:
“ The review thus made of the history of the section requires the conclusion that debts to private persons can in no case claim preference under subdivision 1 of section 212 of the Surrogate’s Court Act.
“ Separate comment should be made on section 130 of the Workmen’s Compensation Law which is quoted at the beginning of this decision. The phrase therein used — ‘ trustee proceedings for administration of estates ’ — has no application to the administration of the estate of a deceased person. The phrase no doubt has application to and perhaps derives its very text from article 7 of the Debtor and Creditor Law where elaborate provision is made for ‘ trustee proceedings for administration of estates.’ In that article provision is made for preferred debts (§§ 188, 189, 190). The context of section 130 of the Workmen’s Compensation Law in Avhich the phrase relating to 1 trustee proceedings ’ is found deals with insolvencies, bankruptcies and receiverships. Applying the ordinary standards of construction it is held that the statute relates to trustee proceedings in connection with such insolvencies, bankruptcies and receiverships and not at all to the administration of estates of deceased persons. In such insolvent administrations the sort of preference granted by section 130 of the statute is not uncommon.
“ The Legislature should not be presumed to have created a new preference in decedent estate administrations while leaving undisturbed the text of section 212 of the Surrogate’s Court Act. *77 The claim of preference of the wage claimants is in all respects denied.” (See, also, Matter of Cawley, 207 Misc. 534; Matter of O’Sullivan, 138 N. Y. S. 2d 849.) The claim of Ida Michel is, therefore, denied any preference.
Objection has been raised by respondent, Meade and Taft Company, to the payment in full by the administrator of income taxes due from the decedent to the State of New York. On July 14, 1959 the State Tax Commission filed a claim in the sum of $6,011.46 for income taxes due for the years 1954 through 1957. On January 14,1960 the administrator paid this claim and interest and a further sum of $760.45 the amount of 1958 income tax. This latter amount was not included in the claim.
The State of New York, as a sovereign, has a common-law right of priority with respect to the payment of taxes over all other creditors of the taxpayer except the United States. (Matter of Smith v. Meader Pen Corp., 255 App. Div. 397, 399, affd. 280 N. Y. 554; New York Term. Co. v. Gaus, 204 N. Y. 512; Central Trust Co. v. New York City & Northern R. R. Co., 110 N. Y. 250, 259; Matter of Century Steel Co. of America, 17 F. 2d 78; Matter of Lincoln Chair & Novelty Co., 274 N. Y. 353, 356; Matter of Carnegie Trust Co., 206 N. Y. 390, 399; Matter of Henke, 193 Misc. 52; Matter of Gruner, 295 N. Y. 510.) The only judgment creditor who might have a priority over the State of New York would be Bitter Bros. Inc. because of its specific prior lien. Since there is enough money on hand to satisfy both the State of New York and Bitter Bros. Inc., any question of priority between them becomes academic. As to the respondent Meade and Taft Company, the court having found that its lien was not perfected, the State of New York was rightfully paid by the administrator and the court will not direct any surcharge against the administrator. The attorney’s fee is fixed and allowed in the amount of $3,000. All other objections have been withdrawn. The remaining matters at issue herein as above outlined including the valuation of the mink coat will be disposed of at a hearing to be held on the 30th day of January, 1961, at 10:30 a.m.