OPINION OF THE COURT
Millard L. Midonick, S.
In this proceeding to settle judicially the final account of the executor in this insolvent estate, the State of New York and City of New York have raised the following question for determination: Is the claim by the State of New York for *677 unpaid income taxes and interest thereon entitled to a priority over the claim by the City of New York for unpaid income taxes, unincorporated business taxes and interest thereon? (The city concedes and the court finds that the business transfers are in no better position than the income taxes, and so the business and income taxes will hereinafter be referred to as income taxes.)
The assets of this estate are and will continue to be insufficient to pay in full the above claims, even if the fiduciary were to be surcharged on the issues raised by the guardian ad litem. The State asserts that it has a priority on its entire claim, whereas the city asserts that the claims are on a parity and shall abate pro rata.
Pursuant to SCPA 1811 (subd 2, par [a]), a fiduciary must first pay (after reasonable funeral expenses and those of administration): "Debts entitled to a preference under the laws of the United States and the state of New York.” While it might appear, at first glance, that the debts of the city are not included in the statute and so are not entitled to a priority at all, claims of the city have been given priority over general creditors (Matter of Atlas Tel. Co., 273 NY 51; Matter of Solomon, 18 Misc 2d 984; Matter of Marks, 17 Misc 2d 396). Nevertheless, the State argues that since the language, "debts of any subdivision of the state,” or similar language, is not included in SCPA 1811, the State is entitled to a priority. It relies specifically on the case of Matter of Solomon (supra), in which the Surrogate of Westchester County found that a State priority was warranted. The city argues, however, that that decision "was made without any notice to the city with respect to the question of priority.” Nevertheless, the city does not deny, and it is clear, that the city appeared and was represented in that proceeding. While there is an apparent distinguishing feature of that case, the facts being that the city’s claim was for an unpaid business tax while the State’s claim was for unpaid income taxes, the result is the same because there is no difference for this purpose between a business tax and an income tax. The precursor for the authority for the present city income tax statute, effective July 1, 1966 (General City Law, § 25-a et seq.), was the General Business and Financial Tax Authorization (General City Law, § 24-a et seq.). Consequently, the taxes imposed by the city in that case compared with those involved herein are of the same nature, and so this court is of the opinion that the result reached in *678 the case of Matter of Solomon (supra) is correct and should be followed.
If one equates SCPA 1811 with the Federal bankruptcy provisions for Federal, State and city tax claims (US Code, tit 11, § 104, subd [a], par [4]), wherein those claims are on a parity (Missouri v Ross, 299 US 72), a conclusion might be drawn that SCPA 1811 creates a parity between all debts referred to therein including Federal and State claims. However, to reach that result would be error since the general priorities granted to Federal debts (US Code, tit 31, § 191) are applicable to this State statute (Matter of Reynolds, 38 Misc 2d 278; Matter of Bucklin, 200 NYS2d 176). Only the Federal Government has relinquished its priority as was done by the above bankruptcy provisions.
The State, however, could have chosen to relinquish any priority which it had and the question arises whether it did so in SCPA 1811. In this regard it should be noted that a number of the cases relied upon by both sides relate to section 574 of the Labor Law and its precursor, section 522 of the Labor Law. (Matter of Solomon, 18 Misc 2d 984, supra; Matter of New York’s Little Bohemia, 171 Misc 236; Matter of Mc-Clatchey, 170 Misc 696.) Section 574 of the Labor Law relates to contributions for unemployment insurance and specifically provides for a parity between that debt and "taxes (other than real property taxes) * * * due the state of New York or any city thereof’. The precursor section, subdivision 6 of section 522 of the Labor Law, on the other hand granted a priority to collection of that debt over a debt due a city. A declaration of priority was necessary therein since contributions for unemployment insurance are not a sovereign right. There is, however, a sovereign right of the State to priority for taxes. (Matter of Smith v Meader Pen Corp., 255 App Div 397, 399, affd 280 NY 554; Matter of Livingston, 30 Misc 2d 71, 77, affd 14 AD2d 264.)
A well-established canon of construction is that the right of a sovereign body for its income tax priority may not be restricted or abridged without a specific statutory provision (Matter of Lehrer-Howard, 181 Misc 683, 685; Matter of Park Rug Shops Stores, 55 Misc 2d 600, 601). Clearly, there is no specific provision included in SCPA 1811. Moreover, the priority of city claims over nongovernmental unsecured debts have been established by appellate case law rather than by the statute. If the State Legislature had intended to confer parity *679 to tax claims of municipalities such as the city in SCPA 1811, it could have and would have incorporated in this statute similar language to that found in section 574 of the Labor Law or in the Federal Bankruptcy Act (US Code, tit 11, § 104). Because of its failure to do so, the State has retained its priority for income taxes. This statute (SCPA 1811) by its language does not alter that priority.
The city argues that the right of the city to tax income was a "delegation of the State’s sovereignty.” By such an analogy it attempts to circumvent the above statutory interpretation and have its rights included in the term "state” in SCPA 1811, thus giving it an equal priority with the State. Clearly, the State did authorize the city to impose an income tax (General City Law, § 25-a). It does not follow necessarily, however, that the city is collecting those taxes as an agent of the State as was the situation in the case of Matter of Brown Print. Co. (285 NY 47). Therein the State claim was for a corporate franchise tax and the city’s claim was for emergency relief taxes. The Court of Appeals pointed out that this emergency relief tax was to be held separate from other revenues and "solely for purposes of relief from suffering caused by unemployment.” (Matter of Brown Print. Co., supra, p 51.) The Court of Appeals went on to distinguish between the city acting as the State’s agent and the State delegating "its taxing powers to the extent of abdicating its constitutional function.” (Matter of Brown Print. Co., supra, p 51.) It is this latter concept which the city would have this court believe the State mandated by authorizing the city to impose income taxes.
The precise rationale of Matter of Brown Print. Co. (supra, pp 51-53) is found in its own language, quite different from SCPA 1811:
"However, in the case at bar we do not reach the question whether in all cases tax claims by the State and by the city are to be dealt with on a basis of parity. Here we find in the enabling act which is involved, and in the nature of the taxes imposed thereunder, evidence of an intent by the Legislature that claims by the city for emergency relief taxes should share equally with other tax claims by the State.
"The emergency relief taxes, for which the city claims parity with the franchise tax due the State, were imposed by the city pursuant to [State laws] * * * Without reference to other details of those statutes it is sufficient for our present *680 purposes to note that those enabling acts expressly provide that revenues resulting from taxes to be levied thereunder shall not be deposited in the city’s general fund but shall be deposited in a separate bank account and used solely for purposes of relief from suffering caused by unemployment. (Emphasis supplied.)
"We have held as to kindred statutes that they 'were passed by the Legislature for a State purpose, public health and welfare’ (John Hancock Mut. Life Ins. Co. v. Pink, 276 N. Y. 421, 426); that by such statutes the State has empowered the city of New York to act as its agent without, however, delegating its taxing powers to the extent of abdicating its constitutional function. (New York Steam Corp. v. City of New York, supra, p. 145, and see pp. 149 and 152; John Hancock Mut. Life Ins. Co. v. Pink, supra, p. 426.) We have also said that by exercising the power granted by such a statute the city of New York '* * * has imposed a tax as sovereign and to meet a need which concerns the welfare of the State.’ (Matter of Atlas Television Co., supra, pp. 51, 57, 58.)
"These rulings, which construe the various enabling acts and the Local Laws enacted thereunder by which emergency relief taxes have been levied and collected, make it clear that by imposing relief taxes the city is not exercising the ordinary taxing power with which it is endowed to meet the cost of local government. As agent for the State, and by authority expressly granted by the Legislature, the city is collecting funds to be used, not for city purposes, but solely for emergency relief which is a matter of State concern. (Emphasis supplied.) * * * Having chosen through the agency of a city to levy and collect taxes and, to accomplish that end, having '* * * authorized and empowered [such city] * * * to adopt and amend local laws imposing in any such city any tax * * * which the legislature has or would have power and authority to impose * * *’ (L. 1937, ch. 327, § 1, emphasis supplied), it is difficult to believe that the Legislature intended to place those taxes — the use of which is restricted to a State purpose — upon a lower level of priority than other State taxes.
"In the absence of a clear statement in the enabling act which would make city emergency relief taxes inferior to other State taxes in the matter of their priority — including corporation franchise taxes — we believe the Legislature intended to accord them parity.”
The question raised by the case of Matter of Brown Print. *681 Co. (supra), is whether the taxes involved herein are duties imposed by the State or are for the costs of local government. If for the latter reason then the implication is that there is a priority of the State (Matter of Brown Print. Co., supra, p 51). It is the opinion of this court that the city income tax is a means of balancing the budget for the costs of local government, and subject to this latter approach. Unlike the emergency relief taxes the revenues from the income taxes are not held separately. In fact, the applicable statute requires income taxes to be deposited "in the general fund of the city” (General City Law, § 25-a; Model Local Law, § 90; Administrative Code of City of New York, § T46-90.0). Moreover, if income taxes were a delegation of the authority to tax to a subdivision of the State, such tax would be an unequal State tax in cities over one million people which might be unconstitutional. All residents of all municipalities are to be treated equally. A State income tax levied by the city solely on city residents would seem to result in unequal treatment. Therefore, it is clear that the city income tax is not a delegation of authority for State revenues but a creation of a way for the cities to collect sufficient revenues to cover their costs of local government. Consequently, the city is not collecting the funds in question as an agent of the State but collecting them for its own purposes.
Finally, this court notes that none of the cases relied upon by the city supports its position. While the cases do establish a priority to the city as against other private creditors, no case decides the question of priority between State and city in the city’s favor. In the cases cited by the city, the question of this priority over the State is not in issue and is not decided (Matter of Atlas Tel. Co., 273 NY 51, supra; Matter of Mc-Clatchey, 170 Misc 696, supra; Matter of Marks, 17 Misc 2d 396, supra).
For the foregoing reasons, the court finds that the State enjoys a priority over the city for the debts involved herein, irrespective of when the claims were filed. Nevertheless, the city is not in parity with all other creditors but has a priority as against them.
All of the other issues, including the determination of amount of legal fees, shall be determined in due course. A hearing shall be scheduled if needed.