## In the MATTER OF BADGER LINES, INC., Debtor.

### APPEAL OF Douglas F. MANN.

No. 97–2274.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 20, 1998.

Decided March 27, 1998.

Robert L. Mann (argued), Matthew P. Gerdisch, Kohner, Mann & Kailas, Milwaukee, WI, for Douglas F. Mann.

Robert M. Waud (argued), Schober & Radtke, Milwaukee, WI, for Robert M. Waud.

John R. Byrnes, United States Department of Justice, Office of the U.S. Trustee, David Walter Asbach (argued), United States Trustee/DOJ, Milwaukee, WI, for M. Scott Michel.

Bernard O. Westler (argued), Previant, Goldberg, Uselmen, Gratz, Miller & Bruegeman, Milwaukee, WI, for Wisconsin Health Fund.

Robert L. Mann, Kohner, Mann & Kailas, Milwaukee, WI, for Badger Lines, Inc.

Before BAUER, COFFEY and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

This appeal presents an issue of first impression under Wisconsin law. We are asked to determine whether a creditor who obtains a judgment lien against a debtor and who institutes supplementary proceedings under Wis. Stat. § 816.04 is required by Wisconsin law to perfect that lien, and if so, how and when that lien is perfected. Because it is unclear what course the Wisconsin courts would follow under these circumstances and because this is an important issue under Wisconsin law, we are certifying the issue to the Wisconsin Supreme Court.

## I.

At the core, this is a bankruptcy preference case, and the dates on which certain events occurred turn out to be very important. For that reason, we will go into some detail about the chronology of events leading up to this appeal. Emerald Leasing Corporation was a creditor of Badger Lines, Incorporated. When Badger did not pay its bill, Emerald sued and, on October 18, 1991, obtained a default judgment against Badger in the amount of $82,120.26. On October 21, 1991, a state court commissioner entered an order directing Badger to appear at a supplementary proceeding involving the judgment. That order was served on Badger on October 30, 1991. A state court commissioner appointed Douglas Mann as the receiver for Emerald on December 17, 1991, and the order appointing him was served on Badger on December 23, 1991.[1]

Badger filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on February 11, 1992. Mann filed a proof of claim on behalf of Emerald, claiming a receiver's lien against the estate. The bankruptcy court appointed Robert Waud as trustee of the estate, and on April 12, 1995, Waud issued notice of his final report, seeking distribution of the remaining funds in the estate to lien and priority creditors. Under Waud's plan, Emerald was to be treated as an unsecured creditor, and was to receive no distribution from the estate. On April 29, 1995, Mann filed a motion seeking a turnover of funds from Badger's estate on the ground that Mann held a judicial lien as defined in 11 U.S.C. § 101(36) which was prior to and superior to the lien and priority creditors listed in Waud's final report.

The bankruptcy court held that the date of the appointment of a supplementary receiver controls when determining the date of creation of a receiver's lien. *See In re Badger Lines, Inc.*, No. 92–20872–JES (Bankr. E.D.Wis. October 25, 1995). That date, December 17, 1991, was within the 90 day period before the filing of the bankruptcy petition during which certain transfers could be avoided by the trustee of the bankrupt estate as being preferential. Accordingly, the bankruptcy court held that the trustee could avoid Emerald's judgment lien. On appeal, the district court reversed. *See In re Badger Lines, Inc.*, No. 95–C–1243 (E.D.Wis. March 12, 1996). Citing *Kellogg v. Coller*, 47 Wis. 649, 3 N.W. 433 (1879), and *Alexander v. Wald*, 231 Wis. 550, 286 N.W. 6 (1939), the district court ruled that the date of service of the subpoena on the debtor to appear at the supplementary proceeding controlled for purposes of determining the effective date of the receiver's lien. That date, October 30, 1991, fell outside the 90 day preference period. However, the district court remanded the case to the bankruptcy court for the purpose of determining whether Wisconsin law required a receiver's lien to be perfected, and if so, whether perfection had been accomplished.

The bankruptcy court determined that Wisconsin law required perfection of a receiver's lien, and that Emerald's lien was not perfected until a supplementary receiver was appointed and/or until the court commissioner issued a turnover order. *See In re Badger Lines, Inc.*, 199 B.R. 934, 938 (Bankr. E.D.Wis.1996), *aff'd*, 206 B.R. 521 (E.D.Wis. 1997). In this case, the court commissioner

---

1. The court commissioner also issued a turnover order on December 17, 1991, the same day as the appointment of Mann as receiver.

appointed Mann and issued a turnover order on December 17, 1991, within the preference period. The.bankruptcy court further determined that perfection of the lien constituted a "transfer" under 11 U.S.C. § 547, and that the statute of limitations for preference actions did not prevent the trustee from relying on the preference statute in a defensive manner. *Id.*, 199 B.R. at 939–40.

The district court affirmed the bankruptcy court's judgment. *See In re Badger Lines, Inc.*, 206 B.R. 521 (E.D.Wis.1997). Again reaching into the distant past, the court cited *Holton v. Burton*, 78 Wis. 321, 47 N.W. 624 (1890), in addition to *Alexander* to support its ruling. Those cases, the district court noted, anticipated that something more than creation of the lien was needed to give a judgment lien holder priority over the interests of those creditors to whom an assignment had been made, when the assignment for the benefit of creditors occurred after the commencement of the supplementary proceeding but before the court commissioner had appointed a receiver. *Id.*, 206 B.R. at 524–25. The district court opined that "a fair reading of the Wisconsin [S]upreme [C]ourt's decisions in *Holton* and *Alexander* indicate that a Wisconsin court would hold that entry of a turnover order by the court commissioner and/or appointment of the receiver in supplementary proceedings is necessary before the receiver's lien attaches to specific property." *Id.*, 206 B.R. at 525. Bolstering this conclusion was New York law, to which the district court also looked because Wisconsin's supplementary proceedings law had been modeled on New York law. The district court noted that New York courts expressly held that a judgment lien obtained by a creditor is inchoate, and is not perfected until an order to deliver is made or until a receiver is appointed. *See also In re Neptune Ave.*, 165 Misc. 309, 299 N.Y.S. 736, 739 (1937); *In re Estate of Livingston*, 30 Misc.2d 71, 211 N.Y.S.2d 897, 900 (N.Y.Sur.1961), *aff'd*, 14 A.D.2d 264, 220 N.Y.S.2d 434 (N.Y.App.Div.1961). Finally, the district court rejected Mann's contention that if New York law applied to the issue of perfection, then the court was also obliged to apply New York law holding that upon appointment, a receiver obtains title to the debtor's property which relates back to the commencement of the supplementary proceedings. Mann argued that he would therefore have held title before the preference period began, giving his lien priority over the others. *Badger Lines*, 206 B.R. at 525–26.

The district court also upheld the bankruptcy court's ruling that perfection constituted a transfer for the purposes of the preference statute. *Id.*, 206 B.R. at 526–27. Because perfection occurred within the preference period, the court held that the trustee could avoid the lien. Nor did the statute of limitations, which required commencement of preference actions no later than two years after the appointment of a chapter 7 trustee, bar the trustee from using the preference statute in a defensive manner against the receiver's motion for a turnover, according to the district court. *Id.*, 206 B.R. at 527.

## II.

Mann challenges nearly every aspect of the district court's decisions. First, he disputes the district court's interpretations of *Holton* and *Alexander*, arguing that neither supports the proposition that a judicial lien is not perfected until a receiver is appointed. Second, he contends that if the court looks to New York law to determine whether perfection is necessary, then it must also adopt New York's procedural "relation-back" rule, which would relate the receiver's interest in the debtor's property back to the time that the receiver was appointed. Third, Mann argues that the judicial lien does not constitute a preference because there is no evidence that Badger was insolvent at the time of the creation of the lien or that the transfer would have allowed the creditor to receive more than he would have received in a Chapter 7 case, and that the evidence shows that the transfer took place outside the 90 day preference period. Fourth, he maintains that a creditor on a simple contract cannot acquire a lien superior to the judicial lien held by Emerald.

### A.

We begin by examining the case law on which Mann relies for his contention that perfection is not required under Wisconsin

law.[2] The district court relied on *Alexander* and *Holton* in holding that Wisconsin law required perfection of judicial liens, and that perfection occurred only when the court commissioner issued a turnover order and/or appointed a receiver. Mann contends that there are no Wisconsin cases directly on point, and argues that the district court misapplied *Alexander* and *Holton*. Mann cites *Kellogg* in support of a contrary conclusion, that perfection is not required. The trustee for Badger argues that Wisconsin law disfavors "secret liens," and that the cases cited by the district court support the conclusion that judicial liens are not self-perfecting. Without admitting outright that no Wisconsin case is on point, the trustee argues that *Alexander* and *Holton* are "consistent" with the district court's ruling.

In *Kellogg*, the case on which Mann relies, two judgment creditors were competing for the debtor's assets. Both instituted supplementary proceedings, Coller two days after Kellogg. Kellogg, although first to institute supplementary proceedings, was second to serve notice on the debtor of the order to appear for an examination of assets. This delay was due to a technical error in the copy of the order served on the debtor; the copy omitted the name of the commissioner issuing the order. In the meantime, Coller proceeded with an examination of the debtor, discovering a life insurance policy of some value. The commissioner appointed a receiver in Coller's case, who, in turn, received an assignment of the debtor's insurance policy. A few days later, Kellogg discovered the error in the copy of the order served on the debtor. Kellogg corrected the error and re-served the order. By this time, however, the receiver in Coller's case had already taken control of the property in dispute. *Kellogg*, 3 N.W. at 434–35.

Kellogg moved for an order requiring Coller's receiver to pay the proceeds of the insurance policy to him. Coller opposed the motion, and moved that the proceeds be disbursed to her. Coller's motion was granted, and Kellogg's was denied. On appeal, the Wisconsin Supreme Court held that Coller's proceeding was "inoperative to give her a prior lien on the assets of the judgment debtor," as against Kellogg. *Id.*, 3 N.W. at 437. After noting the well-settled rule that the creditor who, after filing his bill, obtained first service of the subpoena upon the judgment debtor obtained a prior lien upon the equitable assets of the debtor, the court noted the equally well-settled exception to this rule. "[I]f the creditor proceeded with due diligence a *bona fide* attempt to serve the process was equivalent to actual service thereof in respect to priority of right." *Id.*, 3 N.W. at 436. Because Kellogg instituted the supplementary proceeding first and proceeded with due diligence, the "accidental" delay in service of the order of the commissioner did not affect Kellogg's priority over Coller, the court held. From this holding, Mann argues that "the creditor first serving papers is superior, even if the second creditor's receiver is appointed first and obtains first possession of the debtor's property." Appellant's Brief at 13. The appointment of a receiver, therefore, has no relation to the creation of the lien, according to Mann. Instead, a lien is perfected when it is created by service of the court commissioner's order rather than at the time the receiver is appointed.

We believe that Mann reads too much into *Kellogg*. By Mann's own admission, *Kellogg* does not address the issue of perfection at all. Mann assumes this omission means that perfection is not required, or that judicial liens are somehow self-perfecting. We be-

2. After Mann filed his opening brief and before he filed his reply brief, the Ninth Circuit decided *In re Hilde*, 120 F.3d 950 (9th Cir. 1997). Mann contends that *Hilde* answers the question we have before us in the instant case. The fact pattern is strikingly similar. In *Hilde*, a bank held a prepetition lien on the debtor's property which the trustee sought to avoid as preferential. The Ninth Circuit held that under California law, service on the judgment debtor of an order to appear for a debtor's examination is all that is

required to create and to establish the priority of the resulting lien on the debtor's property. *Hilde* is distinguishable from the instant case, however, because the California lien is defined by statute, and the statute itself makes clear that service of the order to appear is all that is necessary to establish the priority of the lien. Additionally, the court noted, the statute did not refer to perfection. In the instant case, the lien at issue is a common law lien, and *Hilde* therefore does not aid our analysis.

lieve that such an omission is too thin a reed on which to rest this important determination, especially in light of the significant changes which have occurred in debtor/creditor law in the 120 years since *Kellogg* was decided. The district court relied on *Kellogg* to determine the date of acquisition of a receiver's lien, and we agree that *Kellogg* may be sufficient to support that determination. But *Kellogg* does not address whether a receiver must perfect that lien in order to acquire priority over creditors to whom a bankruptcy trustee determines a distribution is owed. Moreover, *Kellogg* addresses a dispute between two judgment creditors. In the instant case, we are asked to determine the rights and priorities of a judgment creditor relative to a trustee in bankruptcy.

**B.**

Mann's reading of *Kellogg* is further called into question by *Alexander* and *Holton.* The trustee argues that those cases anticipate that something more than creation of a judicial lien is necessary for perfection. *Holton* addressed a situation that is more factually akin to the instant case than *Kellogg.* In *Holton,* an insolvent debtor made a voluntary assignment of assets for the benefit of creditors. This assignment was made after supplementary proceedings had been initiated, but before the court commissioner entered an order appointing a receiver. 47 N.W. at 625. The Wisconsin Supreme Court affirmed the judgment of the circuit court vacating the court commissioner's order appointing a receiver, on the grounds that the debtor had already made a lawful assignment of his property for the benefit of all of his creditors: "It is the policy of the law to uphold any lawful proceeding by which the assets of an insolvent debtor may be distributed in equal *pro rata* shares to his creditors, and to enforce such disposition of his property in every case when the particular creditor has not acquired a valid lien upon the property of such insolvent before proceedings for such distribution are instituted." *Id.* The question, the court stated, was what effect an assignment for the benefit of creditors has upon ongoing supplementary proceedings. The court resolved the tension between these two types of proceedings by holding that an

assignment made in insolvency proceedings before the court commissioner in the supplementary proceeding had issued a turnover order or appointed a receiver was effective to convey the debtor's assets for the benefit of the creditors in the insolvency proceeding. *Id.,* 47 N.W. at 626. Thus, the trustee argues, under *Holton,* something more than institution of supplementary proceedings is necessary before a judgment lien can take precedence over an assignment for the benefit of creditors in an insolvency proceeding. But as with *Kellogg,* the court did not specifically address perfection as such, and again, as we will discuss later, debtor/creditor law has developed substantially since *Holton* was decided in 1890.

*Alexander v. Wald* similarly addressed a dispute over a debtor's assets, between a receiver appointed in supplementary proceedings and a trustee in bankruptcy appointed by a federal court. Alexander obtained a judgment against Wald in January, 1937, and instituted supplementary proceedings in February of that year. In April, the court appointed a receiver and authorized the receiver to initiate a creditor's action based on the debtor's fraudulent conveyance of his assets. In December, before the creditor's action went to trial, Wald filed a petition in bankruptcy, and a trustee was appointed. The court in the creditor's action determined that the property in dispute had been fraudulently conveyed and the court declared it was the property of the debtor. Both the receiver and the trustee moved for possession of the property. *Alexander,* 286 N.W. at 7. The Wisconsin Supreme Court affirmed the trial court's ruling that the bankruptcy proceedings had not displaced the lien acquired by the receiver upon his appointment. The court stated as a general rule that "when a court has acquired jurisdiction of a debtor in proceedings for the enforcement of demands of his creditors and has appointed a receiver of his property, interference by another court is permitted only under exceptional circumstances." *Id.* Citing *Kellogg,* the court held that the receiver acquired a lien on the property before the debtor filed his petition in bankruptcy. The rule of *Kellogg,* according to the court was that the "creditor who files

his bill and obtains first service of the subpoena upon the judgment debtor thereby obtains a prior lien upon the equitable assets of the debtor." *Id.*, 286 N.W. at 8. The trustee argues that *Alexander* can be construed to mean that a receiver does not obtain a perfected lien unless and until the receiver obtains service of a subpoena on the debtor to appear at the supplementary proceeding for an examination of assets.

As with *Holton*, however, the *Alexander* court did not specifically address perfection as such. In fact, the Wisconsin courts did not speak much of the concept of perfection of liens until Wisconsin adopted the Uniform Commercial Code in 1965, long after the cases on which the parties rely were decided. *See Winkie, Inc. v. Heritage Bank of White-fish Bay*, 92 Wis.2d 784, 285 N.W.2d 899, 904 (1979), *aff'd*, 99 Wis.2d 616, 299 N.W.2d 829 (1981). To the extent that *Kellogg* can be read to render judgment liens self-perfecting, so too can *Alexander* and *Holton* be read to require something more than institution of supplementary proceedings before such liens are perfected. With no case at any level of the Wisconsin courts on point, and with no case decided after adoption of the Uniform Commercial Code, we are reluctant to speculate what the Wisconsin Supreme Court would hold.[3]

### C.

■ The trustee bases his *Holton* and *Alexander* arguments at least in part on the well-settled principle of Wisconsin law that "secret liens" are disfavored. *See Wilson v. Rudd*, 70 Wis. 98, 35 N.W. 321 (1887). Without perfection, the trustee argues, supplementary receivers' liens are virtually undetectable by creditors and other parties in interest. This is so because there is no central recording place for the filing of such liens. In order to discover such a lien, a creditor would have to check with the clerk of the court of each county in Wisconsin to see if a judgment was entered against the debtor. Perfection achieved by appointment of a receiver or the issuance of a turnover order would remedy the "secret lien" problem, according to the trustee. We asked the trustee at oral argument exactly how the appointment of a receiver or the issuance of a turnover order rendered a judgment more public than the filing of the judgment with the clerk of the court. The trustee responded that perfection by these means brought the judgment one step closer to public notice of the lien because one could assume the trustee would move with all deliberate speed to obtain actual possession of the debtor's property, which is the most public notice possible.

We agree that secret liens are disfavored under Wisconsin law, but we are not persuaded that appointment of a receiver or issuance of a turnover order renders the judgment any more public than it already would be by virtue of its filing with the clerk of the court. In fact, the trustee's argument regarding secret liens is just as persuasive a reason to require that the receiver physically possess the debtor's property before declaring the receiver's lien perfected. Indeed, in one Wisconsin case where the court was determining the rights of a statutory lien holder in relation to the rights of the United States, which held a tax lien against the debtor, the court required that the statutory lien holder take steps amounting to sequestration of the property before that lien would be given priority over the later filed lien of the United States. *See Industrial Commission v. United States*, 252 Wis. 425, 31 N.W.2d 599, 601–03 (1948). Of course, the judgment lien before us is a common law lien, and thus is distinguishable from the statutory lien in that case. *See Candee v. Egan*, 84 Wis.2d 348, 267 N.W.2d 890, 896–97 (1978). But again, we cannot speculate about whether the Wisconsin courts would even

---

**3.** *See also Industrial Commission v. United States,* 252 Wis. 425, 31 N.W.2d 599, 601–03 (1948). There the Wisconsin Supreme Court ruled that a statutory lien against the debtor for unpaid unemployment compensation taxes was not sufficiently specific and perfect to defeat the rights of the United States under a subsequently recorded tax claim against the debtor unless the statutory lien claimant did "something amounting to a sequestration of the property against which he seeks to enforce his lien in order to give it the required specificity. It is not enough that a general or blanket lien may by additional steps be made specific, the necessary steps must have been taken before the property passed into the hands of the receiver."

require perfection of a receiver's lien, much less how that perfection would be accomplished.

## D.

■ The district court bolstered its conclusion that perfection was required, and could be accomplished through the appointment of a receiver or issuance of a turnover order, by referring to New York law. Wisconsin law relating to supplementary proceedings had been based at least in part on New York law. The parties agree that under New York law, a judgment creditor acquires a lien on the debtor's assets by service of an order for examination in supplementary proceedings, but that such a lien is inchoate, and is not perfected until a receiver is appointed or a turnover order is issued. *See Livingston's*, 211 N.Y.S.2d at 900; *Neptune Ave.*, 299 N.Y.S. at 739. Mann does not contest the district court's conclusion that under New York law, a supplementary receiver must take additional steps after creation of a judgment lien in order to perfect that lien. He does, however, dispute the district court's refusal to also employ New York's "relation-back" rule in order to find that the receiver obtains title to the debtor's property as of the commencement of supplementary proceedings.

The district court held that state relation-back principles do not apply for the purpose of determining if a transfer is preferential. The district court relied on *In re Rude*, 122 B.R. 533, 538 (Bankr.E.D.Wis.1990) to support this proposition. After we heard oral argument in this case, the Supreme Court decided *Fidelity Financial Services, Inc. v. Fink*, — U.S. —, 118 S.Ct. 651, 139 L.Ed.2d 571 (1998). Although a slightly different issue was decided there, we find some of the Court's reasoning applicable to the instant case. In *Fink*, the Court interpreted section 547(c)(3)(B) of the Bankruptcy Code, the so-called "enabling loan exception," which provides that the "trustee may not avoid under this section a transfer that creates a security interest in property acquired by the debtor that is perfected on or before 20 days after the debtor receives possession of such property." Missouri law provided a relation-back period for the motor vehicle lien that was the subject of the trustee's avoidance action, allowing such a lien to be considered perfected as of the day of its creation if the creditor files the necessary documents within 30 days after the debtor takes possession. The Court held that "a transfer of a security interest is 'perfected' under § 547(c)(3)(B) on the date that the secured party has completed the steps necessary to perfect its interest, so that a creditor may invoke the enabling loan exception only by satisfying state law perfection requirements within the 20–day period provided by federal statute." *Fink*, — U.S. at —, 118 S.Ct. at 652.

■ The Court reasoned that "Congress sometimes used the word 'perfection' to mean the legal conclusion that for such purposes as calculating priorities, perfection of a lien should be treated as if it had occurred on a particular date." *Id.* At other times, Congress used "perfection" to refer to the acts necessary to support that conclusion. *Id.* The Court held that the terms of section 547(e)(1)(B), ("[A] transfer . . . is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee."), imply that a transfer is perfected only when a secured party has done all the acts required to perfect its interest, "not at the moment as of which state law may retroactively deem that perfection effective." *Id.*, — U.S. at —, 118 S.Ct. at 654. The Court cited a variety of considerations that support the conclusion that Congress did not intend state relation-back or grace periods to control a trustee's power to avoid preferences, and we will not repeat those considerations. However, we believe that the general principle announced by the Court is applicable here. That is, New York relation-back principles (indeed, there are no such principles under Wisconsin law) cannot be used to defeat a trustee's power to avoid preferential transfers. Therefore, we reject Mann's argument that adoption of New York perfection principles necessitates adoption of New York's relation-back principles.

## E.

Mann also contends that the transfer did not constitute a preference, and that in par-

ticular, the trustee failed to prove three of the five elements necessary to prove a preferential transfer. *See* 11 U.S.C. § 547(b). First, Mann argues, there is no evidence that the transfer was made within 90 days of the bankruptcy filing. Second, the trustee produced no evidence that Badger was insolvent on the date of the transfer. Third, there was no evidence that the transfer allowed the creditor to receive more than he would have received in a Chapter 7 case. We cannot agree with Mann on any of these points.

The Bankruptcy Code provides that, for the purposes of the preference statute, "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). Thus, Mann's claim that there was no evidence of insolvency rises and falls with his contention that judgment liens need not be perfected. If perfection is required, then the preferential transfer did not occur until the lien was perfected. The lien was not perfected, the trustee argues, until a receiver was appointed in the supplementary proceedings or the court issued a turnover order. We certainly agree that if perfection is required by Wisconsin law, then the earliest time for perfection in this case is December 17, 1991, which falls within the 90 days preceding the filing of the bankruptcy petition. If perfection is not required, then the lien took priority as of the date of its creation, which occurred before the 90 day preference period. Our resolution of this issue will thus depend on the holding of the Wisconsin Supreme Court regarding the perfection issue. Similarly, whether the "transfer" took place within the 90 day preference period will also be decided by the perfection issue.

As for whether Mann would have received more from the transfer than he would have received in a Chapter 7 proceeding, Mann was anticipating a full recovery of the amount owed to Emerald under the judgment lien. The trustee's final report indicated that the entire estate would be depleted through distributions to lien and priority creditors. As an unsecured creditor, Emerald would have recovered nothing on its claim. The trustee therefore met this burden of proof easily. With these matters resolved, the case comes down to the issue of perfection.

## F.

█ Circuit Rule 52 provides, in relevant part, that "[w]hen the rules of the highest court of a state provide for certification to that court by a federal court of questions arising under the laws of that state which will control the outcome of a case pending in the federal court, this court, *sua sponte* or on motion of a party, may certify such a question to the state court in accordance with the rules of that court, and may stay the case in this court to await the state court's decision of the question certified." We have held that, under this rule, certification is appropriate when the case concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue. *Doe v. American National Red Cross*, 976 F.2d 372, 374–75 (7th Cir.1992), *certified question answered by* 176 Wis.2d 610, 500 N.W.2d 264 (1993). *See also Valerio v. Home Ins. Co.*, 80 F.3d 226 (7th Cir.1996) (certification appropriate where resolution of issue to be certified will control outcome of appeal, and where state courts have not yet ruled on the issue). Although we do not certify questions of state law when the state's highest court has already reached the issue, or when the issue can be resolved by reference to state statutes or established case law, *see Misany v. United States*, 873 F.2d 160, 164 (7th Cir.1989), tangential guidance on the issue is not a sufficient reason to forego certification. *Doe*, 976 F.2d at 375 n. 5.

The trustee moved for certification pursuant to Circuit Rule 52 and Wisconsin Statutes, § 821.01. Wisconsin law provides that "[t]he supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States or the highest appellate court of any other state when requested by the certifying court if there are involved in any proceeding before it questions of law of this

state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state." Wis. Stat. § 821.01. Thus, the first requirement of Circuit Rule 52, that state law provide for certification, is met. The second requirement is also easily met. If perfection is required for judgment liens, then perfection occurred during the preference period, and the trustee can avoid the transfer. If perfection is not required, then the receiver holds a prior, superior lien to the trustee, and may collect from the debtor's estate as much of the judgment as is available. Resolution of the perfection issue will control the outcome of the case.

 The effect of supplementary proceedings on bankruptcy proceedings is obviously an issue of vital public concern. The answer to this issue will inform creditors what steps are necessary to protect themselves when a debtor is on the brink of insolvency. At oral argument, Robert Waud, the trustee, appeared and informed the Court that this issue recurs frequently, and that such claims by a receiver are usually compromised and settled, at least in part because of the uncertainty in the law. Because of the size of the estate here, Waud, after conferring with the U.S. Trustee's Office, decided to resolve the issue once and for all. But it is our belief that the only way the issue can be so resolved is for the Wisconsin Supreme Court to address it. As we discussed above, the parties cite pre-UCC, inapposite cases in support of their positions. There is admittedly no Wisconsin case on point. Therefore, we respectfully certify the following question to the Wisconsin Supreme Court:

> Does Wisconsin law require that a lien obtained by a judgment creditor who institutes supplementary proceedings under Wis. Stat. § 816.04 be perfected, and if so, how is the lien to be perfected?

We invite the Justices of the Wisconsin Supreme Court to reformulate our question if they feel that course is appropriate. We do not intend anything in this certification, including our statement of the question, to limit the scope of their inquiry. The clerk of this Court shall transmit the briefs and appendices in this case as well as a copy of this opinion to the Wisconsin Supreme Court. Further proceedings in this Court are stayed while this matter is considered by the Wisconsin Supreme Court.

QUESTION CERTIFIED.